## WEINMAN v. WILKINSBURG & E. L. P. RY. CO.

ERROR TO THE COURT OF COMMON PLEAS No. 2 OF ALLEGHENY COUNTY.

Argued October 26, 1887—Decided January 3, 1888.

1. The act of March 19, 1879, P. L. 9, for the incorporation, etc., of street-railways in cities of the second and third classes, etc., being special because it relates to but a certain class of street-railway corporations, and local because its operations are confined to cities of the second and third classes, is void because in violation of § 7, article III., of the constitution.

Sutton, a partner of Weinman & Co., was a promoter of a street-railway incorporated under said act, a subscriber for shares of its stock and a

### Statement of Facts.

director. Before paying anything upon his subscription, his firm was accepted in lieu of himself as the subscriber for his shares, and Weinman his partner was chosen at his instance and acted as a director in his stead. The firm paid the first instalment upon the stock subscription and participated in ordering calls for subsequent instalments. In a suit against the firm to recover said calls, Weinman alone served and defending: *Held,*

118    192
26 SC 1  68
26 SC 1  69
118    192
32 SC  220

2. That a defendant who is a stockholder in a company incorporated under said act, and as a member participated in its organization and as a director exercised authority under it, cannot set up the unconstitutionality of the statute as a defence to the payment of his stock subscription.

3. That the defendant firm was liable, not on the ground of a sale of the stock by the original subscriber, but on the ground of a substitution of the firm as a subscriber in his place by an arrangement to which all the parties had assented.

Before GORDON, C. J., PAXSON, STERRETT, GREEN and WILLIAMS, JJ.; TRUNKEY and CLARK, JJ., absent.

No. 73 October Term 1887, Sup. Ct.; court below, No. 469 July Term 1886, C. P.

On June 21, 1886, the Wilkinsburg and East Liberty Passenger Railway Company brought suit in case against J. Weinman and A. N. Sutton, partners as Weinman & Co., to recover unpaid instalments on subscriptions to capital stock. The narr. contained the following counts:

For that whereas A. N. Sutton, óne of the said defendants, heretofore to wit, on . . . . . 1885, to wit, in the county of Allegheny aforesaid, became a subscriber to the articles of association of the plaintiff company, a corporation organized under the act of assembly approved March 19, 1879, and agreed to take twenty shares of the capital stock of said corporation, of the par value of $50.00 each, and to pay for the same when calls were duly made therefor. And the said A. N. Sutton, heretofore, to wit, on . . . . 1885, sold and assigned said shares of the capital stock of said plaintiff company to the firm of Weinman & Company, said firm being composed of said A. N. Sutton and Jacob Weinman, the defendants in this case, and said firm accepted said assignment, and thereupon became liable to pay to the said plaintiff said amount of money so subscribed, and being so liable, they, the said defendants, heretofore to wit, on . . . . . 1885, undertook and then and there faithfully promised the said plaintiff to pay it, the said money, when they should be hereafter requested.

And, whereas, A. N. Sutton, one of the said defendants, heretofore to wit, on . . . . . 1885, to wit, in the county of Allegheny aforesaid, became a subscriber to the articles of association of the plaintiff company, a corporation organized under the act of assembly, approved March 19, 1879, and agreed to take twenty shares of the capital stock of said corporation of the par value of $50.00 each, and to pay for the same when calls were duly made therefor. And the said A. N. Sutton heretofore, to wit, on . . . . . 1885, sold and assigned said shares of the capital stock of said plaintiff company to the firm of Weinman & Company, said firm being composed of said A. N. Sutton and Jacob Weinman, the defendants in this case, and said firm accepted said assignments and agreed with the said assignor that they would pay to the said plaintiff said amount of money so subscribed, and being so liable, they, the said defendants, heretofore, to wit, on . . . . . 1885, undertook and then and there faithfully promised the said plaintiff to pay it, the said money, when they should be thereafter requested.

The defendant Sutton was not served. Weinman pleaded non-assumpsit and specially :

(a) That there is no such corporation as the alleged plaintiff, and said plaintiff has no capacity to maintain this action. (b) That any alleged subscription made by the said A. N. Sutton for any stock of the said plaintiff is and was void in law. (c) That the said alleged assignment of stock by the said A. N. Sutton to these defendants was and is void in law. (d) That said defendants are under no liability by virtue of said alleged assignment to pay for any calls or any subscription to stock, as averred in the declaration. (e) That no legal call or calls has or have ever been made by plaintiff for the said subscription or any part thereof.

At the trial on February 24, 1887, it appeared in evidence : The plaintiff company was incorporated under letters patent dated April 3, 1883, under the act of March 19, 1879, P. L. 9. A. N. Sutton was a subscriber for twenty shares of the stock, and on the organization of the company became one of its directors. At a meeting of the directors on April 8, 1884, at which both Mr. Sutton and Mr. Weinman were present,

Mr. Sutton requested that the stock in his name should be transferred to the firm, and that Mr. Weinman should be chosen as a director in his stead, as he was about to leave the city. Mr. Weinman paid the first instalment, 10 per cent., on the stock, was elected a director, and attended at three meetings of the board, one of which was on July 16, 1884, at which meeting there was a call made for 15 per cent. on the stock subscribed. Mr. Weinman seconded the resolution for this call. After that date the board passed a resolution authorizing the president to make calls for payments. The calls were afterward made out by the secretary under the direction of the president, in pursuance of this resolution. On October 5, 1884, a call of 25 per cent. was made, and on November 15th a call for 50 per cent., the remaining part of the stock unpaid. Notices of the calls were sent by mail to the subscribers, and, finally, a notice was published in the newspapers in April, 1886, marked, Exhibit 2, of which the following is a copy:

By resolution of the board of directors of the Wilkinsburg and East Liberty Passenger Railway Company, all amounts unpaid on subscriptions to stock of said company must be paid to the secretary at his office, 518 Wood street, on or before April 30, 1886.            Wm. H. Allen, Secretary.

The plaintiff's counsel offer in evidence Exhibit 2.

Defendant's counsel: I agree that this notice of publication may be received as of the same effect as if the files of the papers were shown and duly proven, but object to the admission of the notice itself, because it is not and does not purport to be a notice of any call or calls. Objection overruled.[1]

E. J. Allen, on the stand:

Plaintiff's counsel offer in evidence the minute book of the plaintiff company, in connection with the testimony of the witness, particularly the minutes of those meetings which have been referred to, and offer in evidence the minute of April 8, 1884, for the purpose of showing the call for stock, and the minute of October 13, 1884, especially the resolution therein that "the president be authorized to call in such assessments as he may deem necessary, without bringing it before the board."

Q. Did you from time to time, in pursuance of that resolu-

tion, issue calls for the payment of subscriptions? Objected to on the ground that the president had no power even under the resolution.

Objection overruled.[2]

A. Yes, sir; the calls were issued by the secretary under my direction.

The court, WHITE, J., charged the jury orally as follows:

It is earnestly contended by defendant's counsel that he is not liable at all and for various reasons, the first being that the act of assembly of 1879, under which this company was incorporated, is unconstitutional, because it is an act applicable only to cities of the first and second class, Philadelphia and Pittsburgh. I have declined to so decide. It ought to be a very plain case that would justify a lower court in such a decision as that. In any case of doubt it is our duty rather to sustain the acts of the legislature and allow the Supreme Court to pass upon them. Another position taken by the defendant is that there never was any subscription made; that there is not sufficient evidence to show that Mr. Sutton ever made any subscription at all. I think if the jury believe the evidence in the case, it is sufficient to justify them in finding that Mr. Sutton did agree to take twenty shares of the stock. Then it is urged that there is no evidence that the stock was ever transferred to the firm, no transfer on the books of the company, and counsel contends that there could be no transfer whatever of the stock until it was fully paid up, and that even then it could only be transferred on the books of the company. I decline to sustain those positions. [If the defendant, Jacob Weinman, knew that there was a subscription of twenty shares of stock made by his partner, and if the partner requested it to be placed in the name of the firm, and Jacob Weinman was present when that request was made in the meeting of the board of directors, and assented to it and agreed to act as a director in place of his partner, and did so act, and afterwards paid the first call; participated as a director for some time; recognized his liability for these calls as they were made, it is sufficient to show that there was an equitable transfer of the stock to the firm and the firm became liable to pay the calls when made properly.][5] Another position taken is that the

Charge of Court below.

transferee of the stock is not liable for the payment of future calls upon the stock. Counsel has read some decisions of the Supreme Court to the effect that a stockholder in an incorporated company who transfers his stock is still liable himself for the unpaid subscriptions; that the transferee is not liable unless there is some statute making him so, or unless he promises to pay. Perhaps that may be true when there is the naked transfer of the stock and nothing done by the transferee in the way of making himself liable or accepting the position of taking the stock subject to future calls. Where, however, he takes the transfer with that understanding and agreement, that he is to pay the future calls, and acts upon that and so holds himself out to the company, unquestionably he would be liable, even without an express promise to pay. If in pursuance of that transfer the company accept him as the owner of the stock and he participates in the management of the company, especially if he act as a director and assists in making calls he would become liable to future assessments and especially if he promise to pay the calls. [Defendant's counsel also claims that these calls were never legally made according to the act of the assembly under which the company was incorporated. It is evident that they were not made in strict compliance with the law. The law says that assessments shall be made not exceeding five dollars per share in any period of thirty days. It is not clear whether that means that no assessment at any time should be made exceeding five dollars a share, or whether it simply means that taking the average the assessments shall not exceed five dollars in thirty days; but in either view of the case some of these assessments were not in strict conformity to the law.

The assessment for 15 per cent. was made on July 16th, when Mr. Weinman was present; that would be $7.50 per share, which would exceed that limit, and the previous assessment of 10 per cent. had been made thirty days before that; but at all events he would be estopped from denying the validity of that act, for he was present at that time. The next assessment, on October 15th, was for 25 per cent., which was $12.50 per share, which, I think, would come within the construction of the act. The next assessment, however, was made a month after that, and that was for 50 per cent. That, I think, could

not be construed as a proper assessment, or one strictly in accordance with the act. But the point is whether the defendant can raise that question, if he was a director of the company from April, 1884, until April, 1886, and knew of the action of the board authorizing the president to make these calls; if he received notice of them and never objected to it, never resigned his position as a director, but retained it until the new election in April, 1886, and when called upon to pay, not only did not deny his liability for these calls, but expressly promised to pay—I say if these are the facts, he is now estopped from raising a question as to the validity of these calls.] [6]

These remarks, cover, I think, all the questions of law raised by defendant.

[The questions of fact then for you to pass upon are these: did Mr. Sutton, in presence of Mr. Weinman, at the meeting in April, 1884, request that the stock, which appeared to be in his name, should be transferred to the firm name of Weinman & Co.; was he, Weinman, present at the time and agreeing to it and to his election as a director in place of Mr. Sutton, and did he act as such, attending meetings of the board afterwards, in July, and assisting in an assessment of the 15 per cent. call, and continuing as a director until April, 1886, knowing of that action of the board in October, authorizing the president to call in the unpaid subscriptions; knowing that the calls were made by the secretary under the direction of the president, and during all that time interposing no objection, but promising to pay the calls when he was able, and never raising any question as to his liability until after this suit was brought—if you find those to be the facts, he is estopped from denying his liability to pay the whole amount.] [7] . . . . .

[Counsel for defendant has suggested to the court that there was no evidence that Mr. Weinman knew that the president had authority to call in subscriptions; but I say to you, that as a director it would be his duty to attend all meetings of the board, and the presumption would be, that as a director he would know all that the board did. The attention of the court has been called to the fact that at the October meeting, when this authority was given to the president, there was no

quorum present. It was the duty of all the directors to attend, and, strictly speaking, they would not have authority to pass any such resolution as that; yet the directors of the company ought to attend the meetings and are presumed to know what the board does, and if not satisfied with what is done they should attend and have it corrected. I think it is a fair inference that the directors of the company who did not attend the meetings and made no objections to the action of the meeting, virtually sanctioned it.] [8]

The defendant's points are answered as follows:

1. That, under all the evidence in the cause, the verdict should be for the defendant.

Answer: Refused. [3]

2. If the court refuse to charge as above requested, then the court is respectfully requested to charge the jury that in no event can the plaintiff recover more than the assessment of 15 per cent. made on July 16, 1884, with legal interest thereon from the date of publication of notice to pay.

Answer: Refused. [4]

The jury found for the plaintiff $936, and judgment being entered, the defendant thereupon took this writ, assigning for error:

1, 2. The admission of plaintiff's offers. [1] [2]

3, 4. The answers to the defendant's points. [3] [4]

5–8. The parts of the charge embraced in [ ] [5 to 8]

*Mr. H. A. Miller*, for the plaintiff in error:

1. The act of March 19, 1879, P. L. 9, under which the plaintiff company was organized, is unconstitutional. Authorizing only the incorporation of such companies in cities of the second and third classes, it is local in its enactments, and is therefore in violation of § 7, article III., of the constitution: Davis v. Clark, 106 Pa. 377; Scranton Sch. D. App., 113 Pa. 176; Scranton v. Silkman, 113 Pa. 191; Morrison v. Bachert, 112 Pa. 323.

2. The intent of the seventh section of the act evidently is, that no stock shall be transferred until it is fully paid up. Any assignment, therefore, made before then is a nullity as to the corporation. Again, the transfer is to be made on the books of the company before the president or treasurer; then only

does the assignee become a member. In this case there never was any transfer so made. A complete transfer of shares, involving a novation of the contract of membership, can be effected only in the manner prescribed by the charter or the articles of association: Morawetz Corp., §§ 169, 170, 856.

3. A transferee of shares in an incorporated company, subject to future calls, is not personally liable for such unpaid instalments in the absence of any provision in the charter so providing: Del. etc. Canal Nav. v. Sansom, 1 Binn. 70; Palmer v. Ridge Mining Co., 34 Pa. 288; Franks Oil Co. v. McCleary, 63 Pa. 317; Messersmith v. Sharon Sav. Bank, 96 Pa. 440; Coal Co. v. Otterson, 4 W. N. 545.

4. The calls were a nullity. The power of making calls cannot be delegated: Morawetz Corp., §§ 145, 536. Nor was the fact that defendant was a director enough to fix him with notice of what was done at meetings; nor was it his duty to examine the minutes to see what was done: Hallmark's Case, L. R. 9 Ch. D. 329; In re Denham & Co., L. R. 25 Ch. D. 752; Ashurst v. Mason, L. R. 20 Eq. C. 225. No presumption arose, therefore, that defendant had knowledge that the assessments were made by the president, or that he sanctioned them.

*Mr. Geo. B. Gordon* (with him *Mr. John Dalzell*), for the defendant in error:

1. One cannot accept the benefits of membership in a corporation and repudiate the burdens. It was impossible that the defendant should be a member for the purpose of participating at business meetings and acting as director, and not be a member for the purpose of paying for his stock. The argument as to the alleged irregularity of the assignment can have no weight. The defendant was estopped by his conduct from averring that the transfer had not been made as prescribed in the act: Bavington v. Railway Co., 34 Pa. 363; Graff v. Railway Co., 31 Pa. 495; Hays & Black v. Railway Co., 38 Pa. 89; Bell's App., 115 Pa. 88.

2. The ownership of shares of stock carries with it the legal duty of paying all legitimate calls made during the continuance of the ownership. The defendant, coming as he did into privity with the company, there is a necessary and legal implication that he undertook to complete the payment of all that

was unpaid on the shares he held, whenever it should be demanded: Webster v. Upton's Assignee, 1 Otto 65; Bell's App., 115 Pa. 88 ; Merrimac Mining Co. v. Levy, 54 Pa. 227.

3. We can well afford to concede for the purposes of this case that the act of March 19, 1879, P. L. 9, is unconstitutional; but that question can only be inquired into at the suit of the state. A person having contract relations with a corporation cannot deny its existence : Cochran v. Arnold, 58 Pa. 399 ; Grant v. Coal Co., 80 Pa. 218 ; Morawetz Corp., § 774. How much more is this true of a member of the corporation ? But this court has so often held that the legislature has power to classify cities, that a reference to the authorities will unquestionably sustain the act : Wheeler v. Philadelphia, 77 Pa. 348 ; Roup's Case, 81* Pa. 211 ; Kilgore, v. Magee, 85 Pa. 401. This act relating to street railways is directly within the line of those mentioned in Wheeler v. Philadelphia, supra.

OPINION, MR. JUSTICE WILLIAMS :

The assignments of error raise two questions for consideration. The first of these relates to the constitutionality of the act of assembly under which the defendant claims to exercise the powers of a corporation. The second is over the sufficiency of the alleged undertaking to pay, upon which the suit is brought.

The title of the act of 1879, under which the defendant company was organized, is as follows : " An act to provide for the incorporation and for the government and regulation of street railway companies now incorporated, or which may hereafter be incorporated in cities of the second and third class in this commonwealth." Its provisions follow the title, and relate only to the incorporation, government and regulation of street railway companies in cities of the second and third class. The subject of this statute is therefore street railway companies, which is a subject for general legislation ; while the statute professes to deal only with a limited number of these railways, and these are selected by reference to their location in certain cities. Under the guise of a general law we have here one which is special, because it relates to a few members of the general class of corporations known as street railway companies ; and local because its operations are confined to particu-

lar localities, viz., cities of the second and third class. The provisions of the constitution which forbid local and special legislation cannot be brushed aside so easily.

It is urged that this statute is sustainable under the decisions of this court, recognizing the power of the legislature to classify the cities of the commonwealth for purposes of municipal government; but those cases rest upon a very different principle from that involved in the present case. For purposes of local government the state is subdivided into counties, townships, and other municipal and quasi municipal corporations. Each class of these subdivisions has purposes to subserve that are peculiar to it, and needs to be invested with the powers necessary to that end. Generally speaking, all the members of each class have the same local functions to perform. Classification therefore upon this basis has been recognized, and a statute relating to all the townships, all the school districts, or all the members of any particular class of the municipal divisions of the state has been held to be constitutional.

It has been found desirable to divide cities into classes upon the basis of their population. The needs of a great city with a half million or more of people are somewhat different in many respects from the needs of a city with ten thousand. The organization of their local governments and the management of their municipal affairs will be quite unlike. Each of these classes requires legislation peculiar to itself; but such legislation must be applicable to all the members of the class to which it relates, and must be directed to the existence and regulation of municipal powers and to matters of local government. The supposed classification in the act of 1879 is of a very different character.

The act provides for the incorporation and government of street railway companies, but it does not affect all such companies. It selects such companies as may be located in cities of the second and third class, and makes special provision for them, while all other street railway companies remain under the operation of the general law. This is just what the constitution declares shall not be done; and this court has had occasion to enforce the constitutional prohibition in several cases. In Davis v. Clark, 106 Pa. 377, a statute came up for examination which undertook to deal with mechanics' liens in

counties whose population was less than two hundred thousand. This was held to be a local law. It was not an attempt at the classification of counties for any purpose of local government, but an effort to provide a lien in one part of the state under circumstances which would not entitle the mechanic to one under the general law.

Again, in Morrison v. Bachert, 112 Pa. 323, a similar question arose, and Justice PAXSON, delivering the opinion of the court, made this distinct declaration: "It is our purpose to adhere rigidly to that instrument (the constitution) that the people may not be deprived of its benefits. It ought to be unnecessary for this court to make this judicial announcement, but it is proper to do so in view of the amount of legislation which is periodically placed on the statute book in entire disregard of the fundamental law." Neither the rule nor the purpose of this court to apply it in any proper case is therefore in doubt.

But we do not see how the defendant in this case can raise this question. He is a stockholder in the defendant company. He has been, if he is not still a director. He is not dealing with it as a stranger, but as a member who has participated in its organization and claimed and exercised authority under and by virtue thereof. It will not do for him now to deny the rightful existence of this company as to himself and his own stock subscription, which he has affirmed as to all others. As to him we must treat this corporation as having a legal organization and a right to call upon him to fulfil his engagement as a subscriber to its stock.

This brings us to the only other question raised. The evidence shows that one Sutton was a member of the firm of Weinman & Co., and that he was a promoter of this street railway company and a subscriber for twenty shares of its capital stock. He was also a member of the first board of directors. Soon after the organization of the company Sutton, being about to remove from the city, took his partner, Weinman, with him to a meeting of the board of directors, and desired that his firm should be accepted in lieu of himself as a subscriber for the twenty shares of stock standing in his name; and that his partner, Weinman, should be permitted to take his place in the board. The resignation of Sutton and the election of

Weinman as a director in his stead then took place, and were duly entered upon the minutes. Thereafter Weinman took upon himself the duties of a director, attended and took part in the meetings of the board, and among other things favored the collection of the subscriptions to the capital stock of the company. When called upon to pay on the shares by virtue of the ownership of which he was made a director, he objects that no formal written undertaking has ever been made by Weinman & Co. for the payment of Sutton's subscription, and because no transfer of the shares was made by Sutton to the firm upon the books of the company. But the transaction was not a sale of stock by Sutton to the firm, for he had not paid for it. What was alleged by the plaintiff below was that there had been a substitution of one subscriber to the stock in the place of another, by an arrangement to which the plaintiff Sutton and Weinman & Co. were parties. The question for the jury was whether Sutton had been released from his subscription and Weinman & Co. accepted as subscribers for the twenty shares of stock in his stead by the agreement of all the parties to be affected. There was evidence from which such an agreement could be properly found by the jury. It was submitted to them by the learned judge of the court below with fairness, and they have found the fact in favor of the plaintiff. We find no error in the rulings at the trial, and the

Judgment is accordingly affirmed.