## Safe Deposit & Trust Co., Adm'r, *v.* Fricke, Appellant.

[Marked to be reported.]

*Repeal of statutes—General and special—Act of Feb.* 24, 1871, *and March* 22, 1887—*Tax liens.*

A general affirmative statute will not repeal a previous particular statute upon the same subject, though the provisions of the former be different from those of the latter.

The act of March 22, 1877, P. L. 16, entitled " An act in relation to cities of the second class providing for the levy, collection and disbursement of taxes and water rents," does not repeal the act of Feb. 24, 1871, P. L. 126, entitled " An act providing for the registration of lots in the city of Pittsburgh." Nor does the act of May 5, 1876, P. L. 124, repeal the act of 1871.

*Statutes construed in pari materia.*

The fourth section of the act of Feb. 24, 1871, P. L. 126, providing that no property returned and registered in accordance with the provisions of the act " shall be subject to sale for taxes or other municipal claims . . . except in the name of the owner as returned," may be construed in pari materia with the twelfth section of the act of March 22, 1877, P. L. 16. The former act applies to real estate returned and registered, while the latter act may with entire propriety be restricted to real estate which has not been returned and registered according to the provisions of the act of Feb. 24, 1871.

*Classification of cities—Local and special laws.*

A classification of cities for purposes of legislation cannot be sustained, unless the act relates to the exercise of a corporate power of such cities, or to the number, character, powers and duties of a municipal officer thereof, or to some subject under the control of city government.

*Constitutional law—Liens—Sales—Act of March* 22, 1877.

The act of March 22, 1877, sec. 12, declaring that claims for overdue taxes and water rents in cities of the second class, filed in court, shall be liens on the real estate described therein without regard to whether the owner is named therein or not, and that a judicial sale of such real estate shall vest a good title thereto in the purchaser, is unconstitutional and void, for the reason that it offends against those clauses in section 7 article 3 of the constitution which declare that the general assembly shall pass no local or special law " authorizing the creation, extension or impairing of liens·" or " prescribing the effect of judicial sales of real estates."

Argued Nov. 9, 1892. Appeal, No. 272, Oct. T., 1892, by defendants, J. R. Fricke et al., from judgment of C. P. No. 3, Allegheny Co., Feb. T., 1892, No. 224, on verdict for plaintiff, the Safe Deposit and Trust Co., administrator d. b. n. c. t. a. of Arthur Hobson, deceased. Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Ejectment.

The facts appear by the opinion of the Supreme Court.

The court charged as follows by McCLUNG, J.:

" The question here seems to be wholly a question of law for the court. It is a question which it is our duty to determine, and relieve you from all responsibility. Under the record evidence offered, plaintiff has shown himself entitled to a verdict, and there has nothing been shown upon the part of the defendant which legally controverts that title. You should therefore render a verdict for the plaintiff for the land described in the writ, with six and a fourth cents damages and costs." [7]

Verdict and judgment acccordingly. Defendant appealed.

*Errors assigned* were (1–6) rulings on evidence, sufficiently set out in opinion of Supreme Court, and (7) charge of court, quoting bills of exception and charge.

*S. A. Johnston* and *C. C. Dickey*, with them *M. Johnston*, for appellants.—The act of 1877, is repugnant to the act of 1871, and repeals it. A subsequent statute is a repeal of all repugnant provisions in a prior one: Nusser v. Com., 25 Pa. 126 ; Johnston's Est., 33 Pa. 511. The act of May 5, 1876, also repeals the act of 1871.

The acts of 1876 and 1877 are both general acts in that they

relate to cities of the second class, and the legislature may be presumed to have known that the city of Pittsburgh was, at the date of the passage of the act, the only city then in that class, and intended that the act should operate in that city.

These two acts were intended to establish a new and different system from what had prevailed before that time for the levy and collection of taxes and water rents in cities of the second class.

Sholes and his successors in title knew of Fricke's improvements, and they are now estopped to assert title: Davidson v. Barclay, 63 Pa. 406; Chapman v. Chapman, 59 Pa. 214; Cumberland Val. R. R. v. McLanahan, 59 Pa. 23.

*A. M. Imbrie*, with him *Thomas M. Marshall* and *Ed. B. Scull*, for appellees.—Appellant is vested not only with the knowledge of which be became possessed by being a party to the conveyance from his wife and self, but also with such facts as would have been developed by an examination of the records. His vendor was a purchaser at sheriff's sale, and the conveyance to appellant was a quitclaim deed: May v. LeClaire, 11 Wallace, 232; Cadmus v. Jackson, 52 Pa. 306; Simons v. Kern, 92 Pa. 455; Dikeman v. Parrish, 6 Pa. 210; Shearer v. Woodburn, 10 Pa. 512; Olds v. Erie, 79 Pa. 384; Bryan's Ap., 101 Pa. 393; Gans v. Phila., 102 Pa. 101; Hering v. Chambers, 103 Pa. 175; Green v. Belford, 4 Penny. 65; Simons v. Kern, 92 Pa. 455; Wolf v. Phila., 105 Pa. 25; O'Byrne v. Phila., 93 Pa. 227; Wister v. Phila., 86 Pa. 215; Ferguson v. Quinn, 123 Pa. 345; Phila. v. Dugan, 124 Pa. 52.

The act of March 22, 1877, P. L. 16, entitled "An act in relation to cities of the second class providing for the levy, collection and disbursement of taxes and water rents," repeals the act of Feb. 24, 1871, P. L. 126, entitled "An act providing for the registration of lots in the city of Pittsburgh:" Kilgore v. Magee, 85 Pa. 401; Com. v. Reynolds, 137 Pa. 401; Ayars' Ap., 122 Pa. 281; Cheltenham Tp. Road, 140 Pa. 136; Frost v. Cherry, 122 Pa. 418; Wheeler v. Phila., 77 Pa. 338; Street v. Com., 6 W. & S. 212; Seifried v. Com., 101 Pa. 200; Bank v. Com., 10 Pa. 442; Bell v. County, 30 W. N. 193; Malloy v. Rinehard, 115 Pa. 25; Brown v. Com., 21 Pa. 37; Evans v. Phillipi, 117 Pa. 235; Rymer v. Luzerne Co., 142

Pa. 108; Morrison v. Fayette Co., 127 Pa. 110; Rheim B. & L. Asso. v. Lea, 100 Pa. 214; Kilgore v. Com., 94 Pa. 495; Rounds v. Borough, 81 Pa. 395; Hand v. Fellows, 30 W. N. 72; Frederick Street, 150 Pa. 202; Nusser v. Com., 25 Pa. 126; Keller v. Com., 71 Pa. 413.

The provisions of the two statutes can be construed together in pari materia: Phila. v. Dungan, 124 Pa. 56; Ferguson v. Quinn, 123 Pa. 345; Brown v. Commissioners, 21 Pa. 42.

The acts of 1876 and 1877 have neither negative words nor an intelligible form of expression manifesting an intention to repeal any provision of the act of 1871.

If the eleventh and twelfth sections of the act of 1877 are to be construed as claimed by appellant, they are unconstitutional: Bradley v. City, 130 Pa. 478; Ruan Street, 132 Pa. 276; Ayars' Ap., 122 Pa. 281; Shaw v. City, 115 Pa. 46; Meadville v. Dickson, 129 Pa. 8.

Classification of cities and laws confined thereto are permissible only in matters relating to their municipal government, but the rights of persons and property must be in force throughout the state. Laws creating liens and providing methods for the collection of debts must be general and apply to the whole commonwealth. Uniformity of legal procedure was the subject aimed at by the people in framing the organic law: Phila. v. Haddington Church, 115 Pa. 293.

The practice in courts may be changed as to particular subjects by general laws. Municipal liens is such a subject; but not municipal liens in one city or class of cities. There cannot be a different system of practice in the courts for the collection of municipal liens, for every class of municipal corporations in the commonwealth. Classification will not justify that: Pittsburgh Petition, 138 Pa. 435.

No act, omission or neglect of an executor or administrator can bind those interested in the estate unless they or the law authorize it, and there is no privity between this plaintiff and the former executor of the estate: Bigelow on Estoppel, 147; Warden v. Eichbaum, 14 Pa. 121.

OPINION BY MR. JUSTICE STERRETT, January 3, 1893:

In response to the clear prima facie case, made by the plaintiff's evidence in chief, the defendants offered to prove, what

had already been shown by plaintiff, that, in July, 1873, Mrs. Menold, under whom both parties claimed, and her husband, had in due form conveyed the property in fee to Mrs. Fricke, wife of defendant J. R. Fricke. This was of course admitted without objection. They then made the several offers of evidence recited in the first six specifications of error, each of which was objected to for the reasons stated in connection therewith, respectively, and said offers were all rejected. The learned judge then instructed the jury, as complained of in the seventh and last specification, and directed a verdict for plaintiff.

The first of said last mentioned offers embraced record of lien against the property in controversy, filed by the city of Pittsburgh in common pleas No. 1, for taxes of 1877 and 1878, assessed in the name of J. R. Fricke, scire facias thereon in 1881, judgment in 1882, levari facias to March term of same year, and return of sheriff showing sale of the property to J. Charles Dicken.

The objections to this offer, sustained by the court, were: 1st. Because it already appears in evidence that J. L. and W. H. Hastings were the owners of the property at the time the taxes for 1877 and 1878 were assessed; that on October 8, 1874, they had registered their deed in the engineer's office of said city, and that the property was not subject to lien or sale except in the name of said registered owners, and after recovery by suit and service of the writ on them, as in case of summons, scire facias, or other appropriate writ. 2d. Because the record shows that the lien offered was not filed against said registered owners, but against J. R. Fricke, who never had any title to the property, as appears from the evidence, and that there was no recovery by suit and service on the registered owners, as required by law, etc., and any judgment entered thereon is void, and sale thereunder conferred no title on the purchaser.

The second and third of said offers were, (*a*) sheriff's deed to J. Charles Dicken, duly acknowledged and recorded; (*b*) deed of J. Charles Dicken and wife, April, 1883, duly acknowledge and recorded, to defendant J. R. Fricke.

Both of these offers were rejected for substantially same reasons that were successfully urged against the previous offer.

The controlling question thus presented by the specifications of error is whether J. Charles Dicken, the purchaser under the alleged lien for delinquent taxes of 1877 and 1878, acquired any title to the property in controversy. If he did, the title thus acquired and afterwards transferred by him to defendant, J. R. Fricke, would be a good defence; if he did not, the court was clearly right in holding, in substance, that no defence whatever had been shown or offered. It is not pretended that either Dicken or his vendee Fricke had or could have any title to the property except under and by virtue of said sale in pursuance of the alleged lien.

The question involves a consideration of the act of February 24, 1871, entitled "An act providing for the registry of lots in the city of Pittsburgh:" P. L. 126, and also the act of March 22, 1877, entitled "An act in relation to cities of the second class, providing for the levy, collection and disbursement of taxes and water rents:" P. L. 16. The former is a carefully drawn local or special act, providing for a complete system of registration in the city of Pittsburgh alone, designed to facilitate the assessment of real estate, the collection of taxes and municipal claims thereon, etc.; and, at the same time, to protect registered landowners against the consequences of covert sales for taxes or other municipal claims, blunders of incompetent or negligent officials, etc.

The other act, as its title would indicate, professes to relate to cities of the second class and undertakes to provide for the levy, collection and disbursement of taxes and water rents.

For the purpose of registration and to aid the city engineer in making and keeping up his book of plans, etc., all owners of real estate, and all who thereafter, in any manner, acquire title thereto, are required by the third and fourth sections of the act of 1871 to prepare and return to said engineer accurate descriptions of their respective properties, etc. The fourth section then declares, "no property so returned shall be subject to sale for taxes or other municipal claims thereafter to accrue as lien of record thereon, except in the name of the owners as returned, and after recovery by suit and service of writ on him, as in case of a summons, scire facias or other appropriate writ."

It was proved and not controverted that the property in dispute was properly registered in the names of its then owners

J. L. and W. H. Hastings, and so continued until 1880, after the taxes for 1877 and 1878 were assessed and became liens. The taxes for those years were not assessed in the names of the then registered owners, nor in the name of any owner, registered or unregistered, as required by law, but in the name of J. R. Fricke who is not shown to have ever owned the property. This was the result of somebody's inexcusable blunder, or something worse. In assessing the property, filing lien thereon and in proceeding to enforce the same, it is not pretended that a single provision of the registry act was regarded. On the contrary, all its provisions in that regard were wholly ignored. Defendants undertake to justify this by saying the provisions of the registry act above referred to are either supplied or repealed by the act of 1877, under which the lien was filed and the proceedings thereon were had. The twelfth section of that act declares: " All taxes and water rents, filed as liens in default of payment, shall be liens on the real estate, whether the real owner is named or not, and a sale upon the same as against the party assessed shall vest a good title in the purchaser thereof : *Provided*, that the real owner of any property so sold may redeem," etc.

If it be true that it was intended to thus mutilate and destroy the most beneficent provisions of the registry act, the section above quoted was a most vicious piece of legislation. Such intention however cannot be attributed to the legislative department of the government.

Assuming, for argument sake, that this and other provisions of the act of 1877 are within the proper limits of legislation for cities of either class, it follows that said act is a general law, as much so as any general statute applicable to the whole state. If it is not a general law, it must be special or local, and therefore unconstitutional, in so far, at least, as it embraces matters in which local legislation is prohibited. Viewing it then as a general law, what is its effect, or rather the effect of the section referred to, including its cognate provisions, on the registry act of 1871—a purely special, local act, relating to a particular subject? As was recently said by our Brother HEYDRICK in Bell v. Allegheny County, 1 Adv. Rep. 763, and 30 W. N. 193 : " It is a rule of interpretation, as old as the common law, and followed in an unbroken line of decisions in this

state, that a general affirmative statute will not repeal a previous particular statute, upon the same subject, though the provisions of the former be different from those of the latter." To the same effect are Seifried v. Com., 101 Pa. 200 ; Malloy v. Reinard, 115 Pa. 25, and many other cases that might be cited. It will not do to assume that the legislature—well knowing Pittsburgh was the only city of the second class when the act of 1877 was passed,—intended to interfere with special local acts of that city, and especially to repeal all provisions of the registry act that are in conflict with said act of 1877. As was said in Bell v. Allegheny Co., supra, this proves too much. Whenever the intent is to legislate for a particular city, the resultant legislation contravenes sec. 7, art. 3, of the constitution.

It is by no means clear, however,—at least so far as the undisputed facts of this case are concerned,—that the twelfth section of the act of 1877 is in conflict with the above quoted clause of the fourth section of the registry act. The language of the latter is : " No property so returned shall be subject to sale for taxes or other municipal claims, thereafter to accrue as a lien of record thereon, except in the name of the owner as returned," etc. The protection of the act is thus extended only to property returned and registered according to its provisions. Other property, whose owners have neglected to return it for registration, is outside the protection of the fourth section. The twelfth section of the act of 1877, as we have seen, is silent as to " property so returned " and registered. It treats of real estate liened for delinquent taxes, and declares they shall be liens thereon " whether the real owner is named or not," and, further, that a sale upon the lien " as against the party assessed shall vest a good title in the purchaser," etc. This has no necessary application to real estate duly returned and registered. Its operation may therefore, with entire propriety, be restricted to real estate which has not been returned and registered according to the provisions of the act of 1871. As thus construed, there is no necessary repugnancy between the fourth section of the ·latter act and the twelfth section of the act of 1877. The leaning of courts is strongly against repealing the positive provisions of a former statute by construction. The more natural, if not necessary, inference, in all such cases, is that the legislature intended the new law to be aux-

iliary to and in aid of the purposes of the old law. There should, therefore, be such a manifest and total repugnancy in the provisions of the new law as to lead to the conclusion that the latter abrogated and were designed to abrogate the former: Hendrix's Account, 146 Pa. 285. When two statutes are so flatly repugnant that both cannot be executed, and we are obliged to choose between them, the latter is deemed a repeal of the former; but, whenever they can be made to stand together, effect, as far as possible, should be given to both: Brown v. Commissioners, 21 Pa. 42.

It is also claimed that some of the provisions of the act of May 5, 1876, P. L. 124, are. so inconsistent with certain provisions of the registry act, including those of the fourth section, that both cannot stand together. So far as these alleged inconsistencies have any application to the undisputed facts of this case, we are of opinion that the provisions of the fourth section of the said registry act have been neither modified nor repealed by the act of 1876. The principle involved has been sufficiently considered in what has already been said.

But, altogether aside from the questions of repeal, irreconcilable repugnancy, etc., which have just been considered, is the twelfth section of the act of 1877 above quoted within the proper limits of legislation for a city of either class? If it is not, it is necessarily unconstitutional. Nothing can be clearer than that such legislation has its appropriate sphere of operation. That is not only evidenced by the language employed in all the acts classifying the cities of this commonwealth, but by numerous deliverances of this court. The purposes, for which cities are classified, and the only purposes for which such classification is legal, are distinctly stated in said acts. The act of 1874 declares it to be, "for the exercise of certain corporate powers, and having respect to the number, character, powers and duties of certain officers thereof." Precisely the same language was employed in the act of 1887 which, for other reasons, was declared unconstitutional. In the act of 1889, a few words are added, so as to make the section read thus : "For the purposes of legislation, regulating their municipal affairs, the exercise of certain corporate powers and having respect to the number, character, powers and duties of certain officers thereof, the cities," etc., shall be divided into three classes.

In Ayars' Ap., 122 Pa. 281, it is said "the underlying principle of all the cases is, that classification, with a view of legislating for either class separately, is essentially unconstitutional, unless a necessity therefor exists,—a necessity springing from manifest peculiarities, clearly distinguishing those of one class from each of the other classes, and imperatively demanding legislation for each class, separately, that would be useless and detrimental to the others. Laws enacted in pursuance of such classification and for such purposes are properly speaking neither local nor special. They are general laws, because they apply alike to all that are similarly situated as to their peculiar necessities."

In Ruan Street, 132 Pa. 273, our Brother WILLIAMS, in an exhaustive opinion, indicates the ground, and only ground, upon which the classification of cities for purposes of legislation can be sustained, and clearly shows that such classification does not authorize legislation for either class of cities "on subjects not relating to municipal affairs," and cites, as an illustration thereof, an act relating to mechanics' liens in cities of a given class; which act, in Davis v. Clark, 106 Pa. 377, was held to be a local law and forbidden by article 3, sec. 7, of the constitution, which forbids the passage of any local or special law authorizing the creation, extension or impairing of liens.

The act under consideration in Ruan St. related "to the opening and widening, and assessment and payment of damages and benefits," etc., "in cities of the first class and regulating proceedings thereon." That act contained seventeen sections, all of which, except the first and second, were declared unconstitutional, because they did "not relate to the exercise of any corporate power of cities of the first class, or to the number, character, powers and duties of municipal officers, or to any subject under the control of the city government," but, on the contrary, related "to the practice and procedure in the common law courts of the county of Philadelphia, over which the city has no control," etc. One of the offending sections provided for appointment, by the court, of a lawyer to act in conjunction with the board of viewers in assessing damages, etc.

In Weinman v. Railway Co., 118 Pa. 192, an act entitled "an act to provide for the incorporation, and for the government and regulation of certain railway companies now incor-

porated or hereafter to be incorporated in cities of the second and third class," was held to be *special* because it related to a certain class of railway corporations only, and *local* because its operations were confined to cities of the second and third classes, and therefore in contravention of same section of the constitution, supra.

Philadelphia v. Haddington Church, etc., 115 Pa. 291, was a futile attempt, under the guise of legislation for cities of the first class, to give additional force and effect to writs of scire facias sur municipal claims, etc. It was held to be local and in contravention of the constitution, in that it was designed to extend the lien of municipal claims that otherwise would have expired by force of previous statutory provisions.

Other cases to the same effect might be cited, but those already referred to are sufficient for our purpose.

In view of the foregoing authorities and the principles clearly established by them, how can it be successfully claimed that section twelve of the act of 1877 is within the recognized scope of valid legislation for cities of the second class? It certainly does not relate to the exercise of any corporate power of such cities, nor to the number, character, powers and duties of any municipal officer thereof, nor to any subject under the control of city government. On the contrary, it relates to claims for overdue taxes and water rents filed in the courts of Allegheny county, and, under the guise of legislating for cities of the second class, it undertakes to declare that such claims shall be liens on the real estate described therein without regard to whether the owner is named therein or not; and, further, that a judicial sale of said real estate on such lien shall have the effect of vesting a good title thereto in the purchaser. It thus undertakes to prescribe a rule of law for the guidance of the judges of said courts. If the section is constitutional, they are bound to declare, as matter of law, that such claims are liens, and that a sale, by virtue of their process thereon, invests the purchaser with the title of the real owner of the land, notwithstanding he may have fully complied with the law of said city, requiring registration of his property. Without reference to the gross injustice likely to result from the practical operation of the section in question, its crowning vice, as has been said, is in attempting, under the guise of legislation for cities of the

second class, to declare the effect of certain claims filed in the courts of a particular county, and also the legal effect of judicial sales thereunder, by virtue of the process of said courts. On principle as well as authority, we think the section referred to is unconstitutional and void, for the reason that it offends against those clauses in section 7 of article 3, supra, which declares the general assembly shall pass no local or special law " authorizing the creation, extension or impairing of liens," . . . . or, " prescribing the effect of judicial sales of real estate."

We have not found it necessary to consider any of the other provisions of the act of 1877 and therefore express no opinion in regard to them.

Judgment affirmed.

(See, also, the following cases.)