THE STATE *v.* COLUMBIA, GODWIN & SANTA FE TURN-
PIKE CO.

(*Nashville.* December Term, 1915.)

1. **CONSTITUTIONAL LAW. Classification. Population. Turnpike road.**

Acts 1905, ch. 534, as amended by acts 1907, ch. 242, requiring a
turnpike company, whose charter permitted tolls to be charged,
after the turnpike had been metaled as required by Shannon's
Code, sec. 1764, to coat such metaling with a coat of sand, grav-
el or ground rock, restricted in its application to counties hav-
ing a population of not more than 42,750, and not less than
42,700, according to the federal census, thus limiting it to
turnpikes in one county, was a violation of Const. art. 11; sec.
8, declaring that no one shall be deprived of life, liberty, or
property but by the law of the land, since while legislative acts
made special by the use of the population standard for classi-
fication may be restricted to certain counties in their political
capacity, it deprived the company of its property rights without
affecting others in like condition elsewhere in the state, and
since the duty imposed in such county upon a margin of fifty
of population had no substantial and just relation to that coun-
ty apart from other counties in which turnpike roads were
operated. (*Post, pp.* 449, 450.)

Acts cited and construed: Acts 1907, ch. 242; Acts 1905, ch. 534.

Case cited and approved: Restricting cases, 111 Tenn., 234.

Code cited and construed: Sec. 1764 (S.).

Constitution cited and construed: Art. 11, Sec. 8.

2. **STATUTES. "General law." "Special law." Turnpike roads.
Constitutionality.**

Acts 1905, ch. 534, as amended by acts 1907, ch. 242, was in vio-
lation of Const. art. 11, sec. 8, forbidding the increase or dimi-

The State v. Turnpike Co.

nution of the powers of private corporations by special laws, as it did not embrace all of the class to which it was naturally related, and created a preference or established an inequality; a "special law," in the constitutional sense, being one relating to particular persons or things of a class to which they legitimately belong, a law which, by force of no inherent limitation, arbitrarily separates or segregates some person or thing from those upon which but for such separation it would operate; and a "general law,"within the provision of such section that corporations shall be formed under general laws, but shall not be created by special laws, is one by which all persons complying with its provisions may be entitled to exercise powers, rights and privileges conferred, while a "special law" confers on certain persons rights and powers, or imposes liabilities not granted to or imposed on others similarly situated (citing 4 Words and Phrases, Second Series, Special Law; see also, Words and Phrases, First and Second Series, General Law). (*Post, pp.* 450-454.)

Cases cited and approved:   Van Cleve v. Passaic, etc., Com., 71 N. J. Law, 183; Applegate v. Taylor, 224 Mo. 393; Strawn v. Harris, 54 Or., 424; State v. Hamer, 42 N. J. Law, 440; Alexander v. Elizabeth, 56 N. J. Law, 71; State v. Railway, 124 Tenn., 1;- Safe Deposit, etc., Co. v. Fricke, 152 Pa., 231; Pasadena v. Stimson, 91 Cal., 238; Murray v. Board of Com., 81 \Minn., 359; Hamilton County Com'rs v. Rosche, 50 Ohio St., 103; Strong v. Didnan, 207, Ill., 385; Weinman v. Railway Co., 118 Pa., 192.

Constitution cited and construed:   Art. 11, sec. 8.

## FROM MAURY.

Appeal from the Circuit Court of Maury County.— W. B. Turner, Judge.

FRANK M. THOMPSON, Attorney-General, for the State.

W. S. FLEMING, for appellee.

MR. JUSTICE WILLIAMS delivered the opinion of the Court.

This is an appeal by the State of Tennessee from a judgment of the circuit court, sustaining a demurrer to an indictment of the turnpike company. The indictment charged that the company had unlawfully failed, after metaling its turnpike as required by Code (Shannon) section 1764, to spread immediately upon said metaling a coat of dirt, sand, gravel, or ground rock, and that the company had continued to take toll notwithstanding.

The demurrer attacked the constitutionality of the act which required such a coating be so placed on the roadway, same being Act 1905, chapter 534, amended by Act 1907, chapter 242, and among the grounds of attack were the following:

That the act was void, under article 11, sec. 8, of the Constitution, because an attempt to create an arbitrary and unreasonable class and subject the company to liability as a member of that class, and, further, because violative of article 11 section 8, of the Constitution which provides:

"No corporation shall be created or its powers increased or diminished by special laws but the General Assembly shall provide by general laws for the or-

The State v. Turnpike Co.

ganization of all corporations, hereafter created," etc.

The form of charter, prescribed by the general incorporation acts for the appellee company and all other turnpike companies in this State, stipulated that toll might be charged after the pike had been metaled, "the stone of the last coat to be broken of a size not exceeding one-half pound in weight."

The above acts which required a different coating by their terms were restricted in application to counties having a population of not more than 42,750 nor less than 42,700, according to the federal census of 1900 or any subsequent federal census. This confined the operative force of the acts to turnpikes in Maury county, at least until the happening of the remote contingency that under some subsequent census some other county having turnpikes in its borders will fall into the class.

We are of the opinion that it is not competent for the legislature to pass laws thus operating on corporations to increase or diminish their powers or duties, when chartered under the laws of this State, or make their application or force restricted to less than all the counties of the State, by the use of such a population basis for classification.

It is a mistaken idea, all too prevalent judging from recent legislation, that, because classification on the basis of population is sustainable in respect of legislation on certain subjects, it may be appropriate for all purposes of classification in legislative enactments. This erroneous conception, if further indulged by legisla-

tures and upheld by the courts, would soon render the
constitutional prescription and safeguard a dead letter.
If classification by population were deemed permissible
of adoption for every purpose, each county and munici-
pality may for its government be provided with a dis-
tinct code of laws, general in mere form, but special or
local in substance and fact.

Legislative acts made special, by the use of the popu-
lation standard for classification, may be restricted to
affect a certain county or counties in their political or
governmental capacity, but where such legislation is de-
signed immediately to affect the rights of the citizen,
whether a natural or artifical person, in his or its prop-
erty rights, without affecting others in like condition
elsewhere in the State, it may be unconstitutional. *Re-
districting Cases,* 111 Tenn., 234, 80 S. W., 750.

In article 11 section 8, of the Constitution we have a
positive and explicit inhibition on the increase or di-
minution of the powers of private corporations by
special laws. A "special law" is one that relates to
particular persons or things of a class to which they
legitimately belong, as distinguished from a "gen-
eral law," which applies to all persons or things of a
class. A law becomes special, in a constitutional sense,
when by force of no inherent limitation it arbitrarily
separates or segregates some person or thing from
those upon which, but for such separation, it would op-
erate. 4 Words and Phrases, Second Series, 635; *Van
Cleve* v. *Passaic, etc., Com.,* 71 N. J. Law, 183, 58 Atl.,
571; *Applegate* v. *Taylor,* 224 Mo., 393, 123 S. W., 892.

Thus, a "general law" within the meaning of a constitutional provision that corporations may be formed under general laws, but shall not be created by special laws, is one by which all persons complying with its provisions may be entitled to exercise powers, rights, and privileges conferred, while a "special law" is one conferring on certain persons rights and powers or imposing liabilities not granted to or imposed upon others similarly situated. *Straw* v. *Harris,* 54 Or., 424, 103 Pac., 777.

Interdicted special laws are those, the vice of which is that they do not embrace all of the class to which they are naturally related; they create preferences or establish inequalities of burden. "The true principle requires something more than a mere designation by such characteristics as will serve to classify, for the characteristics which thus serve as a basis for classification must be of such a nature as to mark the objects so designated as peculiarly requiring exclusive legislation. There must be a substantial distinction, having a reference to the subject-matter of the proposed legislation, between the objects or places embraced in such legislation and objects or places excluded." *State* v. *Hamer,* 42 N. J. Law, 440; *Alexander* v. *Elizabeth,* 56 N. J. Law, 71, 28 Atl., 51, 23 L. R. A., 525; *State* v. *Railway,* 124 Tenn., 1, 135 S. W., 773, Ann. Cas., 1912D, 805; 6 R. C. L., p. 381, sec. 374.

It cannot be that a special law, within the meaning of the above clause, is only such an one as by name designates or identifies the corporation concerned.

Identification in instances may be as practically effectual by the use of the population standard as by name; and identification, in such mode, is not necessarily classification, but may be the isolation against which the constitutional provision is directed.

The framers of our Constitution intended to express that the functioning of private corporations thereafter should have relation, so far as place is concerned, to the State and not to territorial limits less than that. There had been experienced in this commonwealth hardships incident to the inequality in the benefits and burdens imposed on private corporations by legislative action. The want of uniformity in laws creating and governing private corporations was the mischief that the constitutional inhibition was designed to correct. No longer was the legislature, by way of the courtesy too often shown to local representatives, or by way of favor to combinations of men in a particular locality, to be "transformed from a tribunal of the people into a mere shop for seekers after special privilege" in the form of corporate rights peculiar to the seekers themselves, or in the form of corporate burdens on others imposed for their advantage. It was considered that if a proposed enactment was salutary, its benefits should be shared by all in the State interested therein; that if it was unwise, it should not be passed without challenging the attention, judgment, and vote of all the representatives in both branches of the General Assembly.

The population standard has been held to be illusory and inadequate for constitutional classification in legislation relating to the following subjects: The creation of liens for water rents (*Safe Deposit, etc., Co.* v. *Fricke,* 152 Pa., 231, 25 Atl., 530); the mode and conditions of exercising the power of eminent domain (*Pasadena* v. *Stimson,* 91 Cal., 238, 27 Pac., 604); providing for the treatment of inebriates, at the expense of the public, the evils of intemperance not being bounded by county lines (*Murray* v. *Board of Com.,* 81 Minn., 359, 84 N. W., 103, 51 L. R. A., 828, 83 Am. St. Rep., 379); regulating the right of taxpayers to recover money erroneously paid on property exempt from taxation (*Hamilton County Com'rs* v. *Rosche,* 50 Ohio St., 103, 33 N. E. 408, 19 L. R. A., 584, 40 Am. St. Rep., 653); the regulation of the practice of probate courts in manner of selecting and appointing public administrators (*Strong* v. *Dignan,* 207 Ill., 385, 69 N. E., 909, 99 Am. St. Rep., 225).

Coming to a consideration of the legislative acts under review: How can it conceived that the particular duty attempted to be imposed on turnpike corporations in Maury county, or in counties possible to be covered by the margin of fifty of population, does not sustain as true, substantial and just relation to Giles county or to other counties in the State where turnpikes are operated by corporations? How is the imposition of the duty respecting the mode of coating pikes reasonably appropriate to the one place, as evincing some intrinsic characteristic or need, and not to the others?

May turnpike companies in the one county be thus hobbled while those in other counties may, by the exercise of the same legislative power, if conceded to exist, be favored or facilitated by a lessening of their duty or burden in the same regard?

To so hold would be to run counter to the manifest intent of the framers of the constitution to get away from a patchwork system of corporation laws, and for us to return to the system that formerly existed, which led naturally and inevitably to the granting of special corporate privileges and the imposition of peculiar burdens, and which the constitutional convention was solicitous to abolish.

Clearly the objects sought to be operated on and regulated are not counties of any class, or county concerns, but the effort is to regulate entities by the application to them of a standard that properly relates not to them but to counties.

The only case that has come under our observation where such a segregation of private corporations for regulation was involved is that of *Weinman* v. *Railway Co.*, 118 Pa., 192, 12 Atl., 288. There an act to provide for the incorporation and regulation of certain railway companies in cities of the second and third class was held to be special and in contravention of the Constitution of that State.

There being no error in the ruling of the circuit judge, an affirmance results.