| | |
|---|---|
| 152 | 153, |
| 156 | 577 |
| 152 | 153 |
| 176 | 278 |
| 152 | 153' |
| 206 | 40 |
| 152 | 153 |
| 212 | 111 |
| 152 | 153 |
| e213 | ³ 40 |
| 152 | 153 |
| 217 | ¹381 |

Reeves et al. *v.* Phila. Traction Co., et al., Appellants.

Watkin et al. *v.* West Phila. Pass. Ry. Co. et al., Appellants.

Haines et al. *v.* Twenty-second St. etc. Pass. Ry. Co. et al., Appellants.

*Street railways—Constitutional law—Local law—Act of May 8, 1876.*

The act of May 8, 1876, P. L. 147, repealing the limitations contained in charters of passenger railway companies in cities of the first class, restricting them to the use of horse power, relates to a subject proper for municipal classification, and does not transgress the prohibition of article 3, § 7, of the constitution, as a local or special law amending or extending the charter of a corporation: Weinman v. Pass. Ry., 118 Pa. 192, distinguished.

*Operation of railway by electricity—Consent of councils.*

Where a city by an ordinance of councils consents to the operation of a street railway by overhead electric wires, and the company owning the railway is specifically named in the ordinance, but the company to which the railway is leased for a term of years is not mentioned, the consent of the city to the use of electricity as a motor by the lessee company is sufficiently declared.

In such a case the consent of councils was that the thing should be done by two corporations acting together as one, and such consent, whether it named one or the other, was meant to be operative as to both.

*Right to use new motors.*

Not decided whether the grant of a right to build a passenger railway

does not carry with it, in the absence of specific limitations or prohibi·
tions, the right from time to time to operate it by new methods and mo-
tive powers developed in the progress of invention and experience.

Argued Oct. 24, 1892. Appeals, Nos. 158, 159 and 160,
July T., 1892, by defendants, from decree of C. P. No. 4., Phila.
Co., March T., 1892, Nos. 829, 968, and granting a perpetual in-
junction; restraining defendants from erecting poles and wires
for the electric propulsion of street cars. Before PAXSON, C.
J., STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and
HEYDRICK, JJ.

Bills in equity by Stacy Reeves et al., citizens and property
owners of Philadelphia, against the Continental Ry. Co., the
West Phila. Passenger Ry. Co., the Phila. & Darby R. R. Co.,
the Twenty-second & Allegheny Ave. Pass. Ry. Co., the Phila.
Traction Co., and Abraham M. Beitler, Director of Public
Safety. The bills averred in substance that defendant com-
panies had applied to Abraham M. Beitler, Director of Public
Safety of the City of Philadelphia, for permission to erect and
string wires along the lines of certain streets for the purpose
of supplying electricity by the overhead trolley system to motors
for cars, and that some of such poles will be placed in front of
plaintiffs' properties, and wires will be strung thereon, to the
damage of plaintiffs. The bill also averred that the electric trol-
ley system of operating street passenger railways is not only
a public nuisance, dangerous to life and property, but that it
will inflict private injury to plaintiffs by largely decreasing the
value of their properties and rendering them undesirable as
residences ; and that there is no authority of law for either of
said companies to erect poles or string wires thereon as speci-
fied in the plans. It is also averred that the Traction Company
has distributed poles along the lines of railroad of the other
two companies, and has made preparations to erect the same as
soon as a permit shall be issued to the Traction Company.

The prayers of the bill were for an injunction to restrain the
director of public safety from issuing a permit to either of the
three companies to erect any poles or string wires thereon, and
to enjoin the companies from erecting such poles in front of
plaintiffs' properties.

The answers denied that the electric trolley system of pro-

pelling cars is a public nuisance, or that it is dangerous to life and property. The answers further averred that each of the three companies had authority of law and the consent of the municipal authorities to erect the overhead wires, particularly setting forth their charters and the law and ordinances under which they claimed to do the work.

By its charter the Phila. & Darby R. R. was incorporated " with all the rights and privileges, and subject to all the conditions and restrictions conferred or imposed by an act to regulate railroad companies, approved the nineteenth day of February, A. D. 1849, and the supplements thereto. . . . The said Phila. & Darby R. R. are hereby authorized to construct a railroad from a point at or near the eight mile stone on the Philadelphia and Chester Post Road to such point in the city of Philadelphia, west of the river Schuylkill, as they deem fit: Provided, that the said road, so far as it may be in the county of Philadelphia, shall be located southeast of the said Philadelphia and Chester Post Road."

By a supplement to the act of April 21, 1858, the proviso in the charter above cited is repealed, and it is provided : " The said Phila. & Darby Railroad Company is hereby authorized, in constructing a passenger railroad, to lay the track or tracks upon the line of the Darby Turnpike or Plank Road Company: Provided, The consent of the stockholders of said company is first obtained."

By a final supplement of April 13, 1868, it is provided: " The said Phila. & Darby Railroad Company shall have power to relocate and reconstruct their present road wholly or in part between Philadelphia and Darby, along such route as may by them be deemed most practicable: Provided, That if any change be made in said route said company shall locate their road west of the Darby Plank Road, under the provisions and restrictions of the general railroad law, approved 19th February, 1849."

By the charter of the Continental Ry. Co. it was provided that it " Shall have the right to lay out and construct or cause to be laid out and constructed, a railway in the city of Philadelphia along such route and streets as are hereinafter provided for, namely " (here follows the naming of the streets.)

By section 4 it is provided: " The said company shall have

,. . . . the right to purchase all necessary equipments, such as horses, cars, and other vehicles, and all needful appendages for the conveyance of passengers on and over said railway, as may be deemed necessary or convenient for the accommodation and purposes of said company : Provided, That said railway shall conform in gauge to the passenger railways now laid in the city of Philadelphia, and no freight or burthen trains or locomotives shall be permitted to pass over said railway."

By the eighth section it is provided : " The said company shall be subject to all the provisions of an act regulating railroad companies, approved the 19th of February, 1849, and the several supplements thereto, so far as the same are not altered or supplied by this act."

The Twenty-second Street & Allegheny Avenue Pass. Ry. Co. was organized under the act of May 14, 1889, which is in part as follows : " That any number of persons not less than five may form a company for the purpose of constructing, maintaining, and operating a street railway on any street or highway . . . . for public use in the conveyance of passengers by any power other than by locomotive, and for that purpose may make and sign articles of association, in which shall be stated the name of the company, the number of years the same to continue, the length of such road, as near as may be, the streets and highways upon which the said railway is to be laid and constructed, showing also the circuit of the route, and the amount of the capital stock of the company, which shall not be less than $6,000 to every mile of road proposed to be constructed, and the number of shares of which said capital stock is to consist, and the names and places of residence of a president, and not less than four nor more than twelve directors of the company ; . . . . That the original amount of stock and increased capital shall in no case exceed $30,000 per mile of track, except in case of a passenger railway operated by other than animal power, in which case the capital may be not more than $100,000."

The act of May 8, 1876, is as follows : " Be it enacted, etc., That passenger railways in any and all cities of the first class of this commonwealth may use other than animal power in the carriage of passengers in their cars whenever authorized so to do by the councils of such city, and the limitations contained

in any of the charters of passenger railway companies restricting them to the use of horse power be and the same are hereby repealed: Provided, further, That the councils of such city shall not exercise any of the powers conferred by this act, except such railway companies shall reduce their fares to five cents for a single ride on said railway."

The Philadelphia Traction Company was organized under the act of March 22, 1887, P. L. 8, which provided for the incorporation of companies for the construction and operation of motors and cables or other machinery "for supplying motive power to passenger railways and the necessary apparatus for applying the same, with power to enter upon any street upon which a passenger railway now is or may hereafter be constructed, with the consent of the passenger railway company, and make, construct, maintain, and operate thereon such motors, cables, electrical or other appliances, and the necessary apparatus and mechanical fixtures as will provide for the traction of cars of such passenger railway company, and to enter into contracts with passenger railway companies to construct and operate motors, cables, or other appliances necessary for the traction of their cars: Provided, that such construction and operation shall be subject to such reasonable regulations as shall be required by the borough or city in which the same are located: And provided, further, that no company incorporated under this act shall enter upon any street for the purpose of constructing therein any such motors, cables, or other appliances, until after the consent to such entry of the councils of the borough, town, or city in which said street is located shall have been obtained."

The Traction Company leased the other railways for long terms of years. During 1891 and 1892, various ordinances were passed giving the companies owning the railways specified in the bills the right to erect trolley poles and wires, but the Philadelphia Traction Company was not named in the ordinances.

The case was heard upon bill, answer and proofs, and after argument, the court, in opinions by WILLSON and ARNOLD, JJ., 1 Dist. R. 463, entered a decree in accordance with the prayer of the bill.

*Errors assigned* in each case were (1) granting perpetual injunction; and (2) not dismissing bill.

*Rufus E. Shapley* and *John G. Johnson*, with them *David W. Sellers*, for appellant.—The Phila. & Darby R. R., under its charter, with the consent of councils, has the right to operate by electricity. By its charter this railroad company was authorized to construct a railroad in accordance with the general railroad law of Feb. 19, 1849. The supplement of April 20, 1858, was not intended to restrict but to enlarge its powers.

A corporation authorized to construct and to operate a passenger railway may change its motive power from time to time, as science progresses, provided it does not use a motive power not in common use in the operation of passenger railways generally. It is a matter of general knowledge, and is alleged in the answers, that electricity is a common mode of propulsion of street cars.

The legislature must have known that in the advancement of science new methods of propulsion, especially adapted to railroads, would be discovered. In Ridge Ave. Pass. Ry. Co.'s Ap., 143 Pa. 472, it was held that an obligation upon railway companies to repave streets was not limited to the use of the paving material known at the time of the passage of the act. In Millvale Boro. v. Evergreen Ry., 131 Pa. 21, the right to adopt a different gauge was recognized. In Alden's Ap., 93 Pa. 182, it was held that a reservation of ore for a furnace in an early deed extended to the right to take ore in sufficient quantities to supply a modern furnace equipped with all recent improvements.

In other states the right of passenger railways to avail themselves of new motive powers made feasible by the discoveries of science has been recognized: Canal & Claiborne St. Ry. v. Crescent City Ry., 41 La. Ann. 561; Lonergan v. Lafayette St. Ry., cited in Keasby on Electric Railways, page 18; Halsey v. Rapid Transit St. Ry., 46 Am. & Eng. R. R. Cas. 76; Cincinnati Inclined Plane Ry. v. Telephone Association, 46 Am. & Eng. R. R. Cas. 588; Detroit City Ry. v. Mills, 46 Am. & Eng. R. R. Cas. 608; Moses v. Pittsburgh, Ft. Wayne & Chicago R. R., 21 Ill. 522; Koch v. North Ave. Ry., 23 Atl. R. 463; Booth on Street Railways, § 67; Rafferty v. Central Traction Co., 147 Pa. 579. The only cases in apparent conflict are State v. Inhabitants of Trenton, 23 Atl. R. 281; Farrell v. Winchester Ave. Ry., 23 Atl. R. 757.

All railway companies in cities of the first class under the act of May 8, 1876, with the consent of councils, though limited by their charters to horse power, may operate their railways by electricity. That act is constitutional. It is not an amendment to the charters of passenger railway companies nor is it a local or special act: Wheeler v. Phila., 77 Pa. 338; Wyoming St., 137 Pa. 502; Ayars's Ap., 122 Pa. 266; Ruan St., 132 Pa. 275; Scranton v. Whyte, 30 W. N. 74.

Though the act of May 8, 1876, be unconstitutional, and though all the railway companies appellant be restricted by their charters to the use of animal power, the consent given by the councils of Philadelphia, in the various ordinances, justifies the erection of the trolley system of poles and wires.

There was power in the various railroad companies to receive and to put to use the consent of councils.

The object meant to be accomplished by the act of 1887, in requiring the consent of councils, was attained by the consent given.

The act of 1887 did not require the consent to be given to the Traction Company by name. No benefit to the public would accrue from requiring the giving of such consent. Councils undoubtedly did, by ordinance duly passed, grant full and express consent to the erection of the very poles and wires complained of in the bill, on the very streets therein named. Nobody will dare to pretend that councils did not know that the actual construction of this system would necessarily be by the Traction Company for the street railway companies, whose lines it was then, and for years had been, openly and notoriously operating, with its name conspicuously displayed on every car run on these streets; or that councils did not intend that said actual construction should be made by the street railway companies through the Traction Company.

The decision of the lower court is not in harmony with the unbroken current of authority in other states or with the decisions of this court: New Jersey Law Journal, August, 1892; Lockhart v. Craig St. Pass. Ry., 139 Pa. 419; Rafferty v. Central Traction Co., 147 Pa. 579; Mt. Adams & Eden Park Inclined Ry. v. Winslow, 3 Ohio C. C. R. 425; Canal and Claiborne St. Ry. v. Crescent City R. R., 41 La. Ann. 561; Lonergan

v. Lafayette St. Ry., decided in the circuit court of Lafayette, Indiana, in July, 1890, and cited in Keasby on Electric Wires, page 18; Louisville Bagging Co. v. Central Pass. Ry., cited in Keasby on Electric Wires, page 19; Pelton v. East Cleveland R. R., 22 Weekly Bulletin, 67; Taggart v. Newport St. Ry., 43 Am. & Eng. R. R. Cas. 208; Halsey v. Rapid Transit St. Ry., 46 Am. & Eng. R. R. Cas. 76; Cincinnati Inclined Plane Ry. v. Telephone Association, 46 Am. & Eng. R. R. Cas. 588; Detroit City Ry. v. Mills, 46 Am. & Eng. R. R. Cas. 608; Koch v. North Ave. Pass. Ry., 23 Atl. R. 463; Harvard Law Review for January, 1891; Heilman v. Lebanon, etc., Ry., 145 Pa. 23; Com. v. West Chester Ry., 9 Pa. C. C. R. 542; Dubois Traction Co. v. R. R., 10 Pa. C. C. R. 401 [in Supreme Court, 149 Pa. 1].

*Richard C. Dale, John C. Bullitt* and *Logan M. Bullitt* with him, for appellee.—The franchise of constructing and operating a railway in the streets of a municipality can only be conferred by the legislature: Com. v. E. & N. E. R. R., 27 Pa. 354; Phila. & Trenton R. R., 6 Wh. 25.

The municipal councils cannot grant the franchise. The only function of councils is that conferred upon them by the constitution and the statutes, to wit, to express the municipal consent to the exercise by a corporation of the franchise derived by such corporation through the legislative grant, when the grant has been made subject to municipal consent: Attorney General v. Pass. R., 1 W. N. 489.

The Phila. & Darby R. R. and the Continental Pass. Ry. do not, under their several charters, possess the franchise of erecting poles and stringing wires on the highway for the operation of a passenger railway.

The West Phila. Pass. Ry., by its charter, was granted the franchise of operating a passenger railway by horse power only.

The Traction Company, who have presented an application to the director of public safety for leave to erect the poles, have no franchise to operate an electric railway in West Phila. Whatever might be their rights if the municipal consent required by the act of 1887 had been given to it, such consent never has been given, and the case must stand or fall upon the

efficiency of the ordinance granting the consent to the West Phila. Pass. Ry.

The erection of poles and electric appliances for the operation of a trolley plant upon the streets of West Phila. being without legislative authority, it is a clear invasion of the rights of the public to the highway, and also of the citizens residing upon the line of the highway.

The act of May 8, 1876, is an attempt to amend the charters of a limited number of passenger railways. To amend a charter by special legislation is as much a violation of the constitutional prohibition as to create a corporation by special legislation. The act of 1879, whereby the legislature undertook to provide for the creation of street railway companies in cities of the second and third classes, has been held unconstitutional as special legislation: Weinman v. Wilkinsburg Ry., 118 Pa. 192; Washington St., 132 Pa. 257.

The constitution of Pennsylvania differs from that of Maryland, where, in the case of Hodges v. Baltimore Union Pass. Ry., 10 Am. & Eng. R. R. Cas. 270, an act such as that of 1876 was held sufficient as an amendment to confer new franchises. The Maryland constitution only prohibits the creation of corporations by special legislation. The constitution of Pennsylvania prohibits as well the amendment of their charters. Since, therefore, the act of May 8, 1876, is unconstitutional and inoperative the provisions of the charter of the West Phila. Pass. Ry. remain in full force.

It may be fairly stated as a result of the examination of the statutes that the franchises of these corporations are derived from the commonwealth as the source of the power, but the exercise of the franchise is conditioned upon the corporation obtaining the municipal consent, the municipality having a discretion to determine whether the particular corporation applying for such consent should be permitted to exercise the franchise derived through the general statute: Pittsburgh's Ap., 115 Pa. 4.

Statutes conferring franchises for using streets for corporate purposes, subject to the consent of the municipal authority, were in like manner construed in Com. v. Central Pass. Ry., 52 Pa. 506; Phila. v. Lombard and South St. Ry., 3 Grant, 403; Larimer & L. S. R. R. v. Larimer S. Ry., 137 Pa. 533.

OPINION BY MR. JUSTICE MITCHELL, January 3, 1893:

The questions presented by these cases are exclusively of law, and may be conveniently summed up as, first, has the legislature authorized the appellant companies to do the acts complained of, and, secondly, if so, has such authority become operative by the consent of the municipal councils, validly given?

It is conceded that no such authority is contained in the charter of the companies. But by the act of May 8, 1876, P. L. 147, " Passenger railways in any and all cities of the first class . . . . may use other than animal power . . . . whenever authorized so to do by the councils of such city, and the limitations contained in any of the charters of passenger railway companies, restricting them to the use of horse power, be and the same are hereby repealed, provided," etc. If this statute is constitutional, it supplies the necessary authority. It is claimed however that it transgresses the prohibition of article 3, section 7, of the constitution, in that it is a local or special law amending or extending the charter of a corporation. But under the settled construction of this section, classification of subjects, including cities, is permissible, and legislation which applies alike to all the members of a class, is not local or special but general. The important inquiry, therefore, is whether the act of 1876 is upon a subject as to which the classification of cities is proper. Repeated decisions of this court have marked out the lines upon which such classification may proceed. It is not necessary to cite them all, but in one of the latest, Wyoming Street, 137 Pa. 494 (503), our Brother WILLIAMS has put the test into the compactest phrase: " The test therefore by which all laws may be tried is their effect. If they operate upon the exercise of some power or duty of a municipality of the given class . . . . they are general," and he gives, as an example, " an act relating to the lighting of streets in cities of the third class would be a general law." The control of the vehicles that shall be used on the public streets for the general conveyance of passengers, the rate of speed and the motive power by which they shall be propelled, is equally or even more peculiarly the subject of municipal duty. In fact public conveyances, whether ferry boats, barges, hackney coaches or omnibuses, have been subjects of police regulation and license as long as they have been known or used in Pennsylvania. The act of 1876 is therefore upon a subject

proper for municipal classification and is a general law. It takes off restrictions previously existing as to the motive power of cars upon streets and commits the whole subject to the control of the cities themselves acting through their councils. This is its effect, and that is the test of its constitutionality. That incidentally it has affected and enlarged the charters of certain railway corporations, does not vitiate it as an exercise of unquestionable police powers over subjects within their proper province. The second clause of the act expressly repealing the charter restrictions to horse power as a motor, is not an essential part of its substance, and might have been omitted without impairing its general scope and effect. It was manifestly added to prevent any question of the application of the act to companies already chartered.

The learned court below thought itself bound by the decision in Weinman v. Pass. Ry. Co., 118 Pa. 192, but there is a distinction between the cases that is capable of sharp definition. The statute involved in that case was one relating to the formation of corporations. In the language of the opinion "the subject of this statute is street railway companies, which is a subject for general legislation; while the statute professes to deal only with a limited number of these railways, and these are selected by reference to their location in certain cities. Under the guise of a general law, we have here one which is special, because it relates to a few members of the general class of corporations known as street railway companies; and local because its operations are confined to particular localities." The essence of that decision is that the formation of corporations, their corporate powers, capital stock, dividends, etc., have no relation to the classification of cities, and cannot be made in any way to depend thereon. The act of 1876 on the contrary as we have seen has nothing to do with the formation, stock or dividends of passenger railway companies, but refers solely to the management of their cars on the public streets, a subject having close relation to the powers and duties of the municipal authorities to which the act commits its control.

An interesting and most important question, whether the grant of a right to build a passenger railway, or any similar franchise, does not carry with it, at least in the absence of specific limitations or prohibitions, the right from time to time to operate it by new methods, and motive powers, developed in

the progress of invention and experience, was earnestly argued by appellants, and the cases cited make a strong showing in favor of such view. We have already held in Philadelphia v. Ridge Av. R. W. Co., 143 Pa. 444, 472, that in the matter of repaving "the company is bound to keep pace with the progress of the age in which it continues to exercise its corporate rights," and the argument is that the measure of its duties must also be the measure of its rights. We do not however find it necessary to pass upon this question in the present case, and we refer to it only to avoid the possible implication that we deemed it untenable.

Coming now to the second question, whether the legislative grant has been made operative by the assent of councils, we find that by ordinances of various dates in 1891 and 1892, consent to the erection of the needful appliances and the operation of the roads by overhead electric wires, was given by councils to the Continental, the West Philadelphia, and the Twenty-second Street Railways, each specifically by name. The Philadelphia Traction Company was not named in any of the ordinances, and as it alone had authority in its charter to use the electric system, the learned court below held the consent to be insufficient. As we have however held the act of 1876 to be constitutional, and, as that act supplies the authority wanting in the charters, it might be enough to stop here, and rest the case upon that statute. But as another view leads to the same result, it will be well to present that also.

It appears in the answers and is undisputed that the Philadelphia Traction Company is the lessee for long terms of years of the three other companies defendant, and that each of them is operated exclusively by its lessee. In each case the two companies, lessor and lessee, are in the exclusive management and operation of the latter, which has all the powers and authority of the lessor, except the sole reserved franchise to be a corporation, and has, in addition, its own express and specific franchise to make contracts and lease and operate roads, and furnish motive power. In their aspect to the public as regards their powers and their duties, the two companies are as one, and in the doing of any specific thing whether it should be done with the right hand or the left, is to the public immaterial. What the public interests are concerned with is the thing itself which is to be done, not the technical name of the corpo-

ration that is to do it, and when therefore the councils gave their consent to the operation of the electric system upon the streets occupied by these railway lines, the presumption is that it was the thing more than the person that occupied their attention. The scope of legislative acts, whether statutes or ordinances, is to be determined by the intention of the enacting body, and while that is to be sought in the language employed, yet if the meaning is clear it is not rendered ineffective by the use of inapt words. They may make the meaning more difficult to reach but not the less paramount when ascertained. In the present case the thing to be done was the operation of the railways on the streets named by the overhead electric system, and the corporation by which in fact it was to be done was the Traction Company. Whether by virtue of its own powers or by those of its lessor, was of no moment to the public interests, for, as already said, all the powers of both were in the same hands. But the street railway companies, though they had parted with the present control of all their powers except the reserved franchise to be a corporation, were nevertheless the owners not only of all the franchises but of all the plant, or property necessary for the use of such franchises. To them by virtue of their reversionary interests, it would all finally come upon the termination of the lease, whether by its own limitations, or by surrender, for forfeiture or new contract. There was therefore a legal propriety in naming such company as the grantee of the city's consent that the thing should be done. But, whether or not this consideration entered into the matter at all, the circumstances leave no room for doubt that the consent of councils was that the thing should be done by the two corporations acting together as one, and such consent whether it named one or the other was meant to be operative as to both. This is the common sense view of the action and intent of councils, plain to all men. The subject was within their control, and what they meant by the ordinance is the law of this case. To refine it away and defeat its purpose by technicalities would be a misuse of legal principles, which are instruments to ascertain, not to defeat, legislative intent. We are clearly of opinion that the consent of councils, expressed in the ordinances on the subject, was sufficient.

Decrees reversed, injunctions dissolved, and bills dismissed with costs.