# Ashworth *v.* Pittsburg Railways Company, Appellant.

*Street railways—Common carriers—Passengers—Rates—Classification of cities—Municipalities—Constitutional law—Local and special legislation—Act of June 7, 1907, P. L. 453.*

1. The Act of June 7, 1907, P. L. 453, entitled: "An Act to regulate the maximum rate of fare to be charged for transportation of passengers by street railway companies or corporations in cities of the second class of the Commonwealth, and prescribing a penalty for the violation thereof," is unconstitutional as local or special legislation, and involves an improper classification of cities.

2. The act does not relate to the exercise of the corporate powers or to the corporate officers of cities of the second class, nor regulate the municipal affairs of such cities, and hence is not a subject for which cities may be classified. It follows that as the act applies to certain

street-railways located in but two of the cities of the state, it is special and local legislation and, therefore, unconstitutional and void.

Moschzisker and Potter, JJ., dissent.

Argued Jan. 17, 1911. Appeal, No. 28, Oct. T., 1911, by defendant, from judgment of Superior Ct., April T., 1908, No. 184, affirming judgment of C. P. No. 2, Allegheny Co., Jan. T., 1908, No. 216, for plaintiff on case stated in suit of William H. Ashworth v. The Pittsburg Railways Company. Before Brown, Mestrezat, Potter, Elkin and Moschzisker, JJ. Reversed.

Appeal from Superior Court.

The case turned upon the constitutionality of the Act of June 7, 1907, P. L. 453. See 44 Pa. Superior Ct. 326.

Error assigned was the judgment of the Superior Court.

*William A. Challener*, with him *D. A. Reed* and *Clarence Burleigh*, for appellant.

*Wm. M. Hall*, for appellee.

Opinion by Mr. Justice Mestrezat, May 8, 1911:

Pittsburg is a city of the second class, and the defendant is a corporation created under the laws of Pennsylvania and operates a street railway wholly within the city. For some years prior to June 7, 1907, the defendant had, under a regulation of the company, charged a fare of ten cents for a continuous ride between midnight and five o'clock A. M. The legislature passed an act, approved June 7, 1907, P. L. 453, 5 Purd. 5904, entitled: "An Act to regulate the maximum rate of fare to be charged for transportation of passengers by street railway companies or corporations, in the cities of the second class of the commonwealth, and prescribing a penalty for the violation thereof." The act provides that: "No company or corporation operating a street railway in this commonwealth shall charge, demand, or receive more than the sum of five cents per

trip, or passage, from each passenger on said railway, within the corporate limits of any city of the second class in this commonwealth, for a continuous ride in one car." It also provides that "any officer, director, or employee of such company, operating as aforesaid, who shall violate the provisions of this act shall be guilty of a misdemeanor," punishable by fine or imprisonment, or both. The plaintiff entered one of defendant's cars on July 16, 1907, between midnight and five o'clock A. M. for a continuous trip or passage in the same car between points within the limits of the city. He tendered the conductor five cents as his fare, being the maximum legal fare for a continuous ride in a car, as provided in the act of 1907, which was refused. The conductor then demanded ten cents from the plaintiff as his fare, which the plaintiff refused to pay, whereupon the conductor stopped the car and compelled the plaintiff to leave it.

This is an action of trespass brought to recover damages for the alleged illegal expulsion from the car. The trial resulted in a verdict and judgment for the plaintiff. The Superior Court having affirmed the judgment, the defendant has appealed to this court. The only question for determination here is whether the act of June 7, 1907, is void because it is special and local legislation prohibited by the state constitution. The common pleas and superior courts held that the act was not special or local legislation, and sustained it on the ground that the regulation of fares to be charged for riding on a street car in a city is a municipal regulation, and that the subject of such rates is a municipal affair and therefore within the purposes for which classification of cities is recognized as valid.

The right of the city under article XVII, sec. 9, of the constitution to impose terms on the defendant company as a condition to granting it the privilege of constructing its railway within the city is not involved in the case. That is a constitutional right of which neither the legislature nor the courts can deprive the municipality. The city may impose conditions as to rates of fare for permission to use

its streets, but it is not the exercise of such power or authority that is invoked here as a justification for attempting to regulate the fares to be charged by the defendant company in the city of Pittsburg. That question, therefore, does not enter into the case.

The effect of the act of 1907 is, as suggested by the learned judge of the common pleas, to regulate the fares of street railways in cities of the second class. It operates only on the fares of street railways, and only in cities of the second class, Pittsburg and Scranton, and this would make it a local and special law unless it is a subject for which cities may be classified. It is not claimed to be within the protection of article III, sec. 8, of the constitution. The act itself does not attempt to make a classification of cities in which it is to operate. The Act of June 25, 1895, P. L. 275, 3 Purd. 2705, divides cities into three classes: "for the purposes of legislation, regulating their municipal affairs, the exercise of certain corporate powers and having respect to the number, character, powers and duties of certain officers thereof." Similar purposes for classifying cities were given in the prior acts on the subject. In construing this legislation, we have had occasion in numerous cases to determine the proper basis of classification. It is not necessary to review all the cases or quote from many of them, excerpts from some of the leading cases will be sufficient to indicate the principles upon which the question presented here must be determined.

In Ayars' Appeal, 122 Pa. 266, STERRETT, J., speaking for the court, said (p. 281): "The underlying principle of all the cases is that classification, with the view of legislating for either class separately, is essentially unconstitutional, unless a necessity therefor exists, a necessity springing from manifest peculiarities, clearly distinguishing those of one class from each of the other classes, and imperatively demanding legislation for each class, separately, that would be useless and detrimental to the others. . . . As was said in Scowden's Appeal, 96 Pa. 422, classifica-

tion which is grounded on no necessity and has for its sole object an evasion of the constitution is quite a different thing."

In Ruan Street, 132 Pa. 257, Mr. Justice WILLIAMS discusses the question of classification at length. After saying that classification does not authorize legislation on subjects not relating to municipal affairs and that it is only authorized for the purposes named in the statute, the opinion continues (p. 275): "In order that a given act of assembly, relating to a class of cities, may escape the charge of being a local law, it is necessary, as was said in Weinman v. Railway Co., 118 Pa. 192, that it . . . . must be directed to the existence and regulation of municipal powers, and to matters of local government. . . . Classification does not authorize legislation on subjects not relating to municipal affairs. . . . I will adopt the words of the Act of May 23, 1874, P. L. 230, and say that classification authorizes such legislation as relates to the exercise of the 'corporate powers' possessed by cities of the particular class to which the legislation relates, and to the 'number, character, powers and duties' of the officers employed in the management of municipal affairs. These are the purposes contemplated by the legislature; they are the only purposes for which classification seems desirable; they are the only purposes for which it has been upheld by this court. . . . All legislation not relating to the exercise of (municipal) corporate powers, or to corporate officers and their powers and duties, is unauthorized by classification." In Scranton v. Whyte, 148 Pa. 419, we said (p. 426): "If it (the act) relates to subjects of municipal concern only, it is constitutional, because operating upon all the members of the class it is a general law. If it relates to subjects of a general, as distinguished from a municipal character, it is local, and therefore invalid, although it may embrace all the members of the class." In Safe Deposit & Trust Co. v. Fricke, 152 Pa. 231, the court, per STERRETT, J., said (p. 239): "The purposes, for which cities are classified, and the only purposes for which

such classification is legal, are distinctly stated in said acts. . . . In view of the foregoing authorities and the principles clearly established by them, how can it be successfully claimed that section twelve of the Act of March 22, 1877, P. L. 16, is within the recognized scope of valid legislation for cities of the second class? It certainly does not relate to the exercise of any corporate power of such cities, nor to the number, character, powers and duties of any municipal officer thereof, nor to any subject under the control of city government."

Tested by the principles announced in these and numerous other cases it is clear, we think, that the subject of the act of 1907 is not included in the purposes for which cities may be classified. Legislation for such purposes, therefore, cannot be sustained on the ground of classification. We are unable to see any connection between the population of cities or other municipalities and street railway fares, or why the municipalities of the state should be classified according to their population for the purpose of regulating such fares. The purpose of the act of 1907, is, as declared in its title, the regulation of the maximum rate of fare to be charged for the transportation of passengers by street railway companies in cities of the second class. It is manifest that it relates solely to street railway fares, and it is, therefore, apparent that the subject is of a general, as distinguished from a municipal, character, and hence one for which cities cannot be classified for the purposes of legislation. As held in the Fricke and Ruan cases, the act of assembly declares the purposes for which cities may be classified, and the regulation of fares on street railways is not to be found among them. It is quite certain that the act does not relate to "the exercise of certain corporate powers" of cities of the second class, nor does it have "respect to the number, character, powers and duties of certain officers," of these cities. It is, however, contended by the appellee and so held by the learned superior court that it is "a municipal regulation, and that the subject of such rates is a municipal affair," thereby bringing

the act within the purposes for which cities may be classified. We cannot concur in that conclusion. The act does not attempt to control or fix the rate of speed of the railway, nor does it change its motive power, nor does it regulate the use of the streets by the railway. Conceding the right of the state to exercise such powers, it does not attempt to do so in the act of 1907. The statute deals solely with the rates to be charged by the company for transportation within cities of the second class. It regulates such rates within, but not the affairs of, such cities. Neither in the title nor the body of the act are the cities referred to except to define the territorial limits within which the act regulates the maximum rate of street car fares. The act imposes no obligations on second class cities, prescribes no duties they shall perform, confers no authority on them to regulate car fares, and neither deals with nor regulates any of their corporate powers or affairs. It is also true that it does not enjoin the performance of any duty upon any officer of those cities. It, therefore, does not regulate or affect the cities or their officers, but the affairs of railway companies within second class cities. It deals with the affairs of specified street railway companies, and not with the affairs of the municipalities in which they operate their railways.

We may appropriately quote the following language of the opinion in Weinman v. Railway Company, 118 Pa. 192, as applicable to the case in hand (p. 202): "It (the act) selects such (street railway) companies as may be located in cities of the second and third class, and makes special provision for them, while all other street railway companies remain under the operation of the general law." The act of 1907 selects such railways as are located in cities of the second class and regulates the fares to be charged for transportation on them. As said by the court in the Weinman case: "This is just what the constitution declares shall not be done."

We do not regard Reeves v. Philadelphia Traction Company, 152 Pa. 153, as ruling the present case. That

VOL. CCXXXI—35

case dealt with an act of assembly which, in the language of the opinion "refers solely to the management of their cars on the public streets, a subject having close relation to the powers and duties of the municipal authorities to which the act commits its control." As pointed out above, the act of 1907 does not directly or indirectly regulate the use of the streets by the defendant company, nor does it in any manner affect the management of the company's cars on the streets of the city.

Our conclusion is that the act of 1907 does not relate to the exercise of the corporate powers, or to the corporate officers, of cities of the second class, nor regulate the municipal affairs of such cities, and hence is not a subject for which cities may be classified. It follows that as the act applies to certain street railways located in but two of the cities of the state it is special and local legislation and, therefore, unconstitutional and void.

The judgment of the superior court and the judgment of the court of common pleas are reversed, and judgment is now entered for the defendant in pursuance of the provisions of the case stated.

Mr. Justice Moschzisker, dissenting:

To my mind, the subject-matter of the act in question can be properly termed a "municipal affair." This is made evident when we reflect that if the legislature had seen fit to empower the municipalities to regulate by ordinance the "maximum rate of fare to be charged for transportation of passengers by street railway companies" operating upon their respective highways, such an act would not be an unlawful delegation of legislative power, but simply an authorization to the local bodies to regulate that which the general assembly considered an affair appropriate for municipal control. That it can justifiably be so considered is apparent, for the regulation of the fares to be charged passengers in cars operated upon the streets of a community is a natural subject of municipal control as a matter peculiarly concerning the body

of its people. Indeed, in Phila. v. Phila. R. T. Co., 228 Pa. 325, we have but recently treated the regulation of street railway fares as a subject which cities have been impliedly given the right to legislate upon under the Act of April 15, 1907, P. L. 80, which act we sustained in Brode v. Philadelphia, 230 Pa. 434; and such a grant could only be sustained as legislation affecting municipal affairs. The fact that in this instance, in dealing with the same subject-matter, the state deemed it wise to act directly, would not change the character of the legislation. It seems to me that the present statute is one regulating "municipal affairs," and that it falls within the general classification Act of June 25, 1895, P. L. 275.

My thought is, that the general assembly had the right to legislate upon the subject-matter of the act; that they could reasonably treat it as a municipal affair; that they did so treat it; and that the statute is saved from the taint of local legislation by the act of 1895.

If, however, the act should not be accounted a general one applying to the municipal affairs of a class of cities, then, in view of the decision of this court in the recent case of Roumfort Co. v. Delaney, 230 Pa. 374, I fail to perceive anything in the constitution to forbid it as special or local legislation. In its application to certain cases, such an act might prove unconstitutional as confiscatory, or as an undue interference with vested charter rights, but that point is not raised in the present record.

I would affirm the judgment of the two courts that have already passed upon the question involved.

Mr. Justice Potter joins in this dissent.

*Announcement*