## Sidebotham et al. v. City of Philadelphia et al.

*Harold Evans*, for plaintiffs.

*G. Coe Farrier* and *Ernest Lowengrund*, Assistant City Solicitors, and *Augustus Trask Ashton*, City Solicitor, for defendants.

McDevitt, P. J.—This cause came on to be heard on bill, answer and proofs, from which the court makes the following

### Findings of fact.

1. Plaintiffs are citizens and taxpayers of the City of Philadelphia.

2. Defendant, Harry A. Mackey, is Mayor of the City of Philadelphia. Defendant, Clarence E. Myers, is Director of City Transit of the City of Philadelphia. Defendant, WillB. Hadley, is City Controller of the City of Philadelphia. Defendant, Philadelphia Rapid Transit Company, is a motor power company incorporated under the Act of Assembly of March 22, 1887, P. L. 8, and operates under lease the street railways of the City of Philadelphia, the franchises for which are owned by a number of street railway companies.

3. On Feb. 17, 1928, there was introduced into Council of the City of Philadelphia a bill, entitled "An ordinance to authorize and direct the execution of a contract between the City of Philadelphia and the Philadelphia Rapid Transit Company for the leasing by the City to said Company of a two-track surface car subway proposed to be constructed by the City upon the route therein described." On the said date, the said bill was referred to the Committee on Transportation and Public Utilities. A copy of the said bill is attached to the plaintiffs' bill of complaint.

4. The proposed route of the said subway, commonly known as the Locust Street Subway, as set forth in section 1 of the said bill, is as follows:

"Beginning at or near the entrance to the Delaware River Bridge at or near Franklin Square, thence to the intersection of West Washington Square and Locust Street by any one of the three following routes as may be determined by City Council: (a) Southward under Randolph Boulevard, as the same now is or may appear on the City Plan, to Chestnut Street; thence

southwestward under Independence Square and Washington Square to the intersection of West Washington Square and Locust Street; or *(b)* southward under Sixth Street to Walnut Street; thence southwestward under Washington Square to the intersection of West Washington Square and Locust Street; or *(c)* southward under Seventh Street to Walnut Street; thence southwestward under Washington Square to the intersection of West Washington Square and Locust Street; thence from the intersection of West Washington Square and Locust Street westward under Locust Street to Eighteenth Street; thence northwestward under Rittenhouse Square to the intersection of Nineteenth and Walnut Streets; thence northward under Nineteenth Street to Sansom Street; thence westward under Sansom Street to a point at or near Twenty-fourth Street; thence northwestward under private, City or public property between said point and the east bank of the Schuylkill River, at or near Chestnut Street; thence *via* tunnel under the Schuylkill River to a point at or near the intersection of the west bank of the said river and Chestnut Street; thence westward under Chestnut Street to Woodland Avenue; thence southwestward under Woodland Avenue to a suitable connection with the West Philadelphia surface lines of the Company at or near Thirty-ninth Street; or such modified, changed or substituted route as may be adopted by the City with the approval of the Company."

5. On April 5, 1928, the said bill, designated as Appendix No. 137, was reported favorably to City Council by the said Committee on Transportation and Public Utilities. It was read the first time and laid over to be printed.

6. On April 12, 1928, the said bill was called up for second reading in City Council and agreed to and laid over for third reading.

7. On April 19, 1928, the said bill was called up for third reading and amended in certain particulars not involved in this suit. On the said date the amended bill was agreed to and further consideration thereof was postponed.

8. On May 10, 1928, the said bill was reconsidered and the following amendments thereto were offered:

"AMENDMENT TO APPENDIX No. 137.

"Amend Section 1, by striking out, on page 383, 5th line, paragraph 1, the following:

" 'by the City.'

"Further amend by adding:

" 'Sect. 3. Pursuant to the authority conferred upon the City under and by virtue of the Act of Assembly of this Commonwealth, approved June 17, 1913, P. L. 520, the Director of City Transit be and he is hereby authorized and directed to enter into a contract or contracts with the Philadelphia Rapid Transit Company for the construction of a two-track surface car subway as described in section 1 of this ordinance, at the actual cost thereof, said subway to be designed by the City.'

"Further amend by adding:

" 'Sect. 4. The money to be paid by the City under the contract or contracts authorized in section 3 of this ordinance shall be charged to Item 301 Loan, in the appropriation to the Department of City Transit, or to any other appropriation or appropriations now or hereafter available for such expenditures.'

"Amend title by striking out on the 5th line thereof the words:

" 'by the City'

"and adding on the 6th line thereof, after the word 'described,' the following:

" 'and authorizing and directing the Director of City Transit to enter into a contract or contracts with Philadelphia Rapid Transit Company for the construction of said surface car subway.' "

The said amendments were mimeographed. On the said date, viz., May 10, 1928, the said amendments were agreed to and the final vote was taken on the said bill as so amended and it was passed by Council.

9. The effects of the said amendments offered and agreed to May 10, 1928, were:

(a) To amend the title so as to read:

"An ordinance to authorize and direct the execution of a contract between the City of Philadelphia and the Philadelphia Rapid Transit Company for the leasing by the City to said Company of a two-track surface car subway proposed to be constructed upon the route therein described and authorizing and directing the Director of City Transit to enter into a contract or contracts with Philadelphia Rapid Transit Company for the construction of said surface car subway."

(b) To amend the first sentence of section 1, paragraph 1, so as to read:

"1. That in consideration of the rent reserved and the covenants to be performed by the Company, the City doth hereby let and demise to the Company all that certain two-track surface car subway which is proposed to be constructed, when the same shall be completed, substantially according to the following route:"

(c) To add sections 3 and 4 to the said bill as above set forth in finding of fact No. 8.

10. On May 16, 1928, Harry A. Mackey, Mayor of the City of Philadelphia, approved and signed the said ordinance amended as above set forth.

11. Defendant, Harry A. Mackey, Mayor of the City of Philadelphia, has executed on behalf of the said City the contract of lease set forth in the said ordinance.

## Discussion.

This is a taxpayer's suit to test the validity of the Ordinance of May 16, 1928, and the letting thereunder to the Philadelphia Rapid Transit Company of a contract for the construction of a section of the proposed Locust Street Subway without competitive bidding. After hearing, the court granted a preliminary injunction. The case is now before the court on final hearing.

## Questions involved.

1. May a contract for the construction of a subway or other transit facility to be owned by the City be lawfully entered into between the City and a local street railway or motor power company without competitive bidding?

2. May an ordinance authorizing the lease of a subway to be constructed by the City be amended on the date of its final passage by the addition of sections directing the Director of City Transit to enter into contracts with a local motor power company for its construction, without referring the amended ordinance to any committee, having it printed or reading it more than once?

On Feb. 17, 1928, there was introduced into Council a bill entitled "An ordinance to authorize and direct the execution of a contract between the City of Philadelphia and the Philadelphia Rapid Transit Company for the leasing by the City to said Company of a two-track surface car subway proposed to be constructed by the City upon the route therein described." This was duly referred to the proper committee, printed, read three times, and with slight amendment was ready for final vote. On May 10, 1928, it was reconsidered,

amended by adding two new sections authorizing and directing the Director of City Transit to enter into a contract or contracts with the Philadelphia Rapid Transit Company for the construction of the subway at the actual cost thereof. The title was also amended so as to read, "An ordinance to authorize and direct the execution of a contract between the City of Philadelphia and the Philadelphia Rapid Transit Company for the leasing by the City to said Company of a two-track surface car subway proposed to be constructed upon the route therein described and authorizing and directing the Director of City Transit to enter into a contract or contracts with Philadelphia Rapid Transit Company for the construction of said surface car subway." These amendments were mimeographed, were referred to no committee, were read once only and adopted. On the same day the bill as so amended was finally passed and on May 16th approved by the Mayor.

On June 12, 1928, the present suit was filed to enjoin the Director of City Transit from signing and the Controller from numbering and certifying the proposed contract.

The grounds on which the injunction was sought are twofold: (1) The invalidity of the City entering into a contract for the construction of a public improvement such as a subway without competitive bidding; (2) the invalidity of the Ordinance of May 16, 1928, authorizing the contract, due to its form and manner of passage.

The court in granting the preliminary injunction upheld complainant's contention that the letting of the contract without competitive bidding was illegal and found it, therefore, unnecessary to deal with the questions of procedure in passing the ordinance.

The construction of the Act of 1913, contended for by defendants, would render the statute unconstitutional as special legislation, in that (a) it would give to street railway and motor power companies in cities of the first class powers not given to other like companies, and (b) would give such companies the privilege of taking contracts from the City without competitive bidding, while still requiring construction companies and individual contractors to engage in competitive bidding: Weinman v. Passenger Ry. Co., 118 Pa. 192, 201; Ashworth v. Pittsburg Rys. Co., 231 Pa. 539; Reeves v. Phila. Traction Co., 152 Pa. 153.

A construction that invalidates an act or lays it open to grave constitutional doubt must always be rejected for one, supported by reason, which will not conflict with the Constitution: Com. ex rel. v. Benn, 284 Pa. 421, 442; Lewellyn v. Frick, 268 U. S. 238, 69 L. Ed. 934.

The Ordinance of May 16, 1928, as originally introduced in February, provided merely for the leasing to the Philadelphia Rapid Transit of a subway therein described *to be constructed by the City*, generally referred to as the Locust Street Subway. After the bill had been referred to the appropriate committee, read three times and was ready for final passage, it was suddenly reconsidered, and there was introduced at the close of the meeting of Council on May 10th an amendment which changed the purpose of the bill by eliminating the requirement that the subway should be constructed by the City and adding two sections authorizing and directing the Director of City Transit to enter into one or more contracts with the Philadelphia Rapid Transit for its construction. In order to accomplish this, the title of the bill was amended so as to eliminate reference to the construction of the subway *by the City*, and to add the words "and authorizing and directing the Director of City Transit to enter into a contract or contracts with Philadelphia Rapid Transit Company for the construction of said surface car subway."

The City Charter (Act of June 25, 1919, art. XVI, § 6, P. L. 581, Pa. Stat., 1920, § 3069) provides:

"No ordinance shall be passed except by bill, and no bill shall be so altered or amended during its passage as to change its original purpose. No bill shall be considered unless referred to a committee, returned therefrom, and printed for the use of the members, and no bill shall be passed containing more than one subject, which shall be clearly expressed in its title.

"All amendments shall be printed for the use of the members before the final vote is taken on the bill, and no bill shall become an ordinance upon the same day on which it was introduced or reported."

These requirements are mandatory.

"Ordinances being among the most important and solemn acts of a corporation, it is essential to their validity that they shall be adopted by the proper body, duly assembled, and in the manner prescribed by the charter. . . . When the mode of enacting ordinances is prescribed it must be pursued. Hence, a city ordinance which is contrary to the charter provisions is as invalid as a statute which does not conform to the requirements of the Constitution:" Dillon, Municipal Corporations (5th ed.), 575. *Accord,* Corry *v.* Corry Chair Co., 18 Pa. Superior Ct. 271, 278; Altoona *v.* Bowman, 171 Pa. 307.

There is no presumption of the regularity of the proceedings of Council such as exists in the case of the State Legislature: Altoona *v.* Bowman, 171 Pa. 307, 311.

"We cannot assent to the suggestion that the almost conclusive presumption in favor of the constitutional regularity of proceedings of the legislative department of the government is equally applicable to the regularity and legality of municipal corporation proceedings. The cases are widely different. In the consideration of acts of assembly, etc., emanating directly from the law-making department, courts, as members of the judicial department, must necessarily presume that every constitutional requirement in the enactment of such laws has been observed. A proper degree of deference is due by each department to each of the others. The limited power and authority with which municipal corporations, as agencies of the state, are invested, must be exercised strictly within the lines and limitations prescribed by the law-making power."

The Ordinance of May 16, 1928, violates the City Charter, in that *(a)* the original purpose was changed, *(b)* it contains more than one subject, *(c)* it became an ordinance the same day the amendment of May 10, 1928, was introduced, etc.

*(a) Change of purpose.*

The original purpose of the bill was to provide merely for the lease of a subway to be built *by the City.* The dual purpose of the ordinance as finally passed was (1) to provide for the lease of a subway to be built by the Philadelphia Rapid Transit, and (2) to direct the execution of contracts with the Philadelphia Rapid Transit for its construction.

It is evident that Council itself thought the purpose was changed, because it felt it necessary to alter the title so as to cover the amendment.

The original title of the bill was:

"An ordinance to authorize and direct the execution of a contract between the City of Philadelphia and the Philadelphia Rapid Transit Company for the leasing by the City to said Company of a two-track surface car subway proposed to be constructed by the City upon the route therein described."

This clearly expressed the subject of the bill as introduced. It certainly failed to express the subject of the bill as amended, and it was consequently altered to read:

"An ordinance to authorize and direct the execution of a contract between the City of Philadelphia and the Philadelphia Rapid Transit Company for the leasing by the City to said Company of a two-track surface car subway proposed to be constructed [by the City] upon the route therein described, *and authorizing and directing the Director of City Transit to enter into a contract or contracts with Philadelphia Rapid Transit Company for the construction of said surface car subway.*"

The amendment consisted in eliminating the words "by the City," marked in brackets, and adding the last clause as italicized.

The purpose of the bill was thus clearly changed from a mere lease of a subway to be built by the City to a dual purpose of a lease of a subway to be built by the Philadelphia Rapid Transit and a direction to enter into a contract with the Philadelphia Rapid Transit for its construction.

"To render valid the passage of an ordinance under charters or statutes of the character under consideration, the ordinance finally passed must be in substance the same as the ordinance originally introduced. Any material or substantial difference between the ordinance originally introduced and that passed will render the ordinance void if the ordinance in the form in which it was finally passed was not before the council for the required time, or was passed at the meeting at which it was introduced:" 43 Corpus Juris, 528.

*(b) The ordinance contains more than one subject.*

The provision of the City Charter against the passage of ordinances containing more than one subject imposes the same restriction upon Council as are imposed by the Constitution upon the Legislature.

The test in such cases is whether the several provisions have a proper relation to each other and constitute parts of a scheme to accomplish a single general purpose.

It has been held that an act referring in one section to one school borough and in another section to all the schools in that borough and a district not connected with the borough school district contains more than one subject and is unconstitutional: Payne *v.* School District, 168 Pa. 386.

So, also, a tax levy and an appropriation cannot properly be joined in one ordinance: Com. *v.* Morrow, 40 Pitts. L. J. 287.

A lease of a subway and a contract for its construction are two quite different subjects, which should be dealt with in separate ordinances. That Council thought the two subjects were distinct is indicated by the fact that it was deemed necessary to amend the title when the new subject was introduced.

*(c) The amended ordinance was passed the same day the amendment was introduced.*

The amendment was introduced on May 10th and the ordinance passed the same day. So great was the haste that the amendment was only mimeographed and was read only once and referred to no committee.

"Any material or substantial difference between the ordinance originally introduced and that passed will render the ordinance void if the ordinance in the form in which it was finally passed was not before the council for the required time, or was passed at the meeting at which it was introduced: 43 Corpus Juris, 528.

In considering the analogous provision of the Act of May 23, 1889, P. L. 277, which provided that "no bill shall be considered unless referred to a

joint or separate committee, returned therefrom and printed for the use of the members," the Supreme Court has laid down the rule that "under a fair construction of the wording of the law, the bill is to be offered, referred to a committee, returned therefrom, and then printed for the use of the members, before it can, in a proper sense, be considered:" Hallock *v.* Lebanon, 215 Pa. 1; Altoona *v.* Bowman, 171 Pa. 307, 310.

"In employing the language above quoted [Act of May 23, 1889, 'No bill shall be passed finally in either branch upon the same day on which it was introduced or reported'], the legislature evidently intended to absolutely prohibit the final passage of any bill or ordinance by either branch of councils on the same day upon which it was introduced or reported in said branch. The wisdom of the prohibition, or limitation on the authority of councils, has been demonstrated by experience, and the law should be rigidly enforced, notwithstanding the alleged fact that councils, in this case, may have acted on erroneous advice as to the scope of their power in the premises. No such saving clause can be found in the act, and its interpolation, by strained construction or otherwise, would be not only unauthorized but exceedingly dangerous." See, also, Seventh St., Lebanon City, 5 Dist. R. 591.

In passing the ordinance Council did not comply with the provisions of the City Charter, in that *(a)* the original purpose of the ordinance was changed from the mere authorization of lease by the addition of the provisions directing the award to the Philadelphia Rapid Transit of a contract for its construction without competitive bidding; *(b)* it contains two distinct subjects, and *(c)* it was passed on the same day the amendment was introduced without reading the amendment more than once or referring it to any committee.

The proposed contract is illegal because such contracts can only be let to the lowest responsible bidder, after an estimate of the cost has been made in accordance with the Act of May 23, 1874, § 6, P. L. 230, and with the City Charter (Act of June 25, 1919, art. xx, §§ 1 and 2, P. L. 581).

The Ordinance of May 16, 1928, authorizing the contract, is void because not passed in accordance with the requirements of the City Charter, art. xvi, sect. 6.

For these reasons, the Director of City Transit is enjoined perpetually from executing the proposed contract and the City Controller is likewise enjoined from certifying and numbering the said contract.

*Conclusions of law.*

1. The Ordinance of May 16, 1928, is unlawful and void, in that it directs the execution of a contract for the construction of a subway, to be owned by the City, without competitive bidding, in violation of the Act of May 23, 1874, § 6, P. L. 230, and the Act of June 25, 1919, art. xx, § 2, P. L. 581.

2. The Act of June 17, 1913, P. L. 520, does not authorize a city of the first class to enter into a contract with a motor power company for the construction by such company of a subway, to be owned by the said city, without competitive bidding.

3. To construe the Act of June 17, 1913, P. L. 520, as authorizing the construction of a subway, to be owned by the City, without competitive bidding would raise grave doubts as to the constitutionality of the act as being special legislation forbidden by the Constitution of the Commonwealth of Pennsylvania, art. iii, sect. 7.

4. The Ordinance of May 16, 1928, was not passed in accordance with the requirements of the Act of June 25, 1919, art. xvi, § 6, P. L. 581, and is, therefore, void.

5. The plaintiffs are entitled to an injunction perpetually restraining the Director of City Transit from executing a contract with the Philadelphia Rapid Transit Company for the construction by such company of the Locust Street Subway as directed by the Ordinance of May 16, 1928, and perpetually restraining the City Controller from certifying and numbering the said contract.

Let a decree be entered accordingly. Defendants to pay costs.

Final decree entered April 5, 1929. An appeal was taken therefrom to the Supreme Court, but subsequently discontinued on Sept. 30, 1929.